918 So.2d 383 (2006)
Robson B. WERNECK, et al., Appellants,
v.
Annamarie WORRALL, etc., Appellee.
No. 5D04-3323.
District Court of Appeal of Florida, Fifth District.
January 6, 2006.
*385 Sylvia H. Walbolt and Christine R. Dean of Carlton Fields, P.A., Tampa, and Nicholas A. Shannin of McDonough, Wieland, Shannin & Gumula, Orlando, for Appellants.
Nancy Little Hoffman of Nancy Little Hoffman, P.A., Pompano Beach, and Robert L. Spector of Robert L. Spector, P.A., Fort Lauderdale, for Appellee.
PER CURIAM.
In this wrongful death action arising from a motor vehicle collision, Appellants, against whom a substantial jury verdict was returned, assert three points on appeal. Finding reversible error on one of these pointsimproper opening and closing by counsel for Appelleewe reverse and remand for a new trial on damages only.
Appellee's late husband, Robert Worrall, died of a heart attack two days after suffering severe burns in a motor vehicle accident. Mr. Worrall was traveling in his truck on a dark stretch of a state highway when he collided with a parked tractor-trailer. The driver of the tractor-trailer had pulled over to fix a problem with his trailer's lights but did not pull his trailer completely off the road. Instead, the back side of the trailer was about four-and-a-half feet into the traffic lane. Moreover, the driver had failed to put out reflector triangle warnings, required by law under these circumstances.
Appellee, as personal representative of her late husband's estate, ultimately brought a 10-count complaint against the driver and four other entities: the driver's employer and owner of the tractor, Donvors Trucking, Inc. ("Donvors"); the owner of the trailer, Florida Independent Delivery Services, Inc. ("FIDS"); the company whose advertisement was on the trailer, R.T.G. Furniture Corp., ("R.T.G."); and Rooms to Go, Inc. ("Rooms"). Appellee alleged that both R.T.G. and Rooms had joint ventures with the owner of the trailers and further alleged that R.T.G. was vicariously liable for the actions of the owner of the trailers. The joint venture count against Rooms, the only count against Rooms, was dismissed by the trial court before the trial. At trial, at the close of her case-in-chief, Appellee voluntarily dismissed her suit against R.T.G.
Near the beginning of his opening statement, Appellee's counsel stated:
In this case we have a whole bunch of defendants. We have R.T.G., Rooms to Go. Rooms to Go as you know is a  is a furniture store with approximately 90-90 *386 stores doing over a billion dollars in sales. This is the
Counsel for the defense made a relevancy objection, moved to strike and moved for mistrial. He noted that the case did not involve punitive damages and argued that the mention of assets prevented his client from obtaining a fair trial. Although initially inclined to grant the motion, ultimately the trial judge denied the request, concluding that the single reference to sales was not sufficiently prejudicial to warrant a mistrial.
Near the end of his closing argument, Appellee's trial counsel made the following plea for a specific amount of pain and suffering damages for Appellee:
[APPELLEE'S COUNSEL]: Lastly, ladies and gentlemen, there is pain and suffering. Pain and suffering is something that is wholly within the province of the jury. I will tell you what I think is fair and reasonable. What is fair and reasonable is what you decide, not what I decide, not what Mr. McDonough says it is. It is what is indeed the common sense of the jury.
You heard everybody's story, you heard Ms. Worrall's story, you heard what a wonderful man this was, what a special man he must have been to split his life with his wife so that one works days, one works nights so there will always be somebody there. As she said, when she was strong and he was weak, they were a couple. When he was strong and she was weak, they were a couple. When Peter was in the hospital, when he was being operated on, when he had eight surgeries in three years, he was a rock he was a partner, and he was her soul mate, and there is no value. There is no value. I'm going to suggest to you a figure. Mr. Tipping told you that FIDS had 140 trailers. Mr. Sauls (phonetic) told you that they had 80 trailers. As Mr. Braun would say, I'm going to use the conservative figure, so we used 80. Now, the average cost per hour of a daycare worker according to all three of the experts was $9.75. I want you to award that to her every day for the rest of her life, $780. Every day to remember her husband like this, every day to remember that she has the burden of raising this child who is not going away.
The following exchange then took place upon Appellants' counsel receiving permission to approach the bench:
[APPELLANTS' COUNSEL]: The defendant objects and moves for a mistrial because the plaintiff is using our assets as a measure of damages in this case which so prejudices the defendant, specifically FIDS, that they can't get a fair trial from this jury.
[APPELLEE'S COUNSEL]: May it please the court. I didn't use their assets. I said they had 80 trailers, I didn't say that these trailers from 4-23-2000 and you should award that. In fact, the figure I used was a health care worker.
THE COURT: What does that have to do with anything?
[APPELLEE'S COUNSEL]: I'm using it as a figure for a basis, it's in trucking. It's not prejudicial. I'm not pounding on it, not comparing the FIDS which is exactly what the case law says.
THE COURT: Previous ruling was hour per
[APPELLEE'S COUNSEL]: Yes sir, but I didn't say that each one of these instructions is worth 40.
THE COURT: It's one more in the record.
[APPELLEE'S COUNSEL]: Yes sir, okay.
After the bench conference was concluded, Appellee's counsel thereupon resumed his suggested computation of pain and suffering *387 damages using the number of FIDS trucks multiplied by the hourly rate of a daycare worker:
$780 per day, $780 per day to remember what she has to remember every day. $780 to lose a life mate, somebody she's been with since they were youngsters. That would come out to $284-$284,700 per year. . . . The figure for the entire period of time that the statistics say that her husband would have been her companion, shared her burdens and shared her life is this, $5,864,020.
Counsel then asked for a total award of $6,938,320. In rebuttal closing, counsel reiterated: "the cost of the daycare worker for an hour times 80 is $284,700 from the time of the accident to today, and $5,580,120." The jury returned a verdict in favor of Appellee in the amount of $5.5 million. The jury found the driver of the tractor-trailer 40% negligent, his employer, Donvors, 40% negligent, and the owner of the trailer, FIDS, 20% negligent. Of the $5.5 million awarded, almost $5 million was attributable to the past and future pain and suffering incurred by Appellee individually.
At the hearing on post-trial motions, the trial court expressed consternation over the fact that Appellee's counsel repeatedly used the number of FIDS trucks to calculate a pain and suffering award. Appellee's counsel replied: "Well, it was done, and the word 80 trucks never came up again. The word 80, I agree that the figure was used. When we went back it was never used. If I had suggested to the jury a figure of $780, would we still be in the same position without using the trucks?" The court answered: "I think you would be in a stronger position than you are now." The trial court specifically noted and expressed concern that the jury awarded close to the amount suggested by Appellee's counsel. The judge stated:
What troubles me in this case is that the jury returned with almost exactly your figure. Your figure was derived by using 80 trucks. As I said, that has nothing to do with it, and you kept on doing it.
Nevertheless, after taking the matter under advisement, the trial court denied the post-trial motion for new trial.
As to the opening statement, Appellee makes no attempt to argue any proper motive for advancing what was clearly a prohibited comment about R.T.G's wealth. See Batlemento v. Dove Fountain, Inc., 593 So.2d 234, 241 (Fla. 5th DCA 1991) (remark about wealth of party improper and prejudicial). Instead, Appellee argues that the trial court was within its discretion to deny the motion for mistrial because the prejudice to Appellants was sufficiently eviscerated by the curative instruction given by the trial judge. We disagree. Without consulting the attorneys, after the bench conference concluded, the trial judge told the jury:
I did mean to the extent that I can to give a curative instruction. The  the amount of sales that R.T.G. or Rooms to Go has is of no relevance whatsoever to this litigation. Its sales are very different than profits or assets. It was an inappropriate comment. And so the jurors will completely disregard that comment.
(Emphasis added). Unfortunately, this curative instruction, instead of mitigating any prejudice, might have created the false impression that the only objectionable aspect of the statement was the reference to sales. Because the court differentiated between profits or assets and sales, however, and because part of the improper comment addressed the number of stores owned by R.T.G., the jury might have been left with the impression that profits and assets were *388 an appropriate issue for their consideration.
Appellee also argues that Appellants suffered no prejudice because the comment was directed only at R.T.G., who was dismissed from the suit at the close of Appellee's case. Although this argument is somewhat more persuasive, we remain concerned that the prejudice to R.T.G. affected FIDS because of Appellee's theory that R.T.G. and FIDS were engaged in a joint venture involving the trailer.
Appellee's closing was likewise improper. Although, as Appellee points out, the number of trucks and hourly wage of a daycare worker were in evidence, this evidence was introduced for different purposes and had no "logical nexus in deduction or analogy" to the amount of pain and suffering incurred by Appellee.[1]Wright & Ford Millworks, Inc. v. Long, 412 So.2d 892 (Fla. 5th DCA 1982). The fact that counsel could have suggested a wholly arbitrary number to the jury does not give counsel carte blanche to mislead the jury by knowingly urging it to employ specious methodology, especially when the defendant's assets are part of the equation in a case where punitive damages are not an issue.
Although a trial court has considerable discretion on motions for mistrial or new trial, when reasonable men cannot differ as to the propriety of the action taken by the trial court, the trial court cannot be affirmed. Brafman v. Rybalka, 673 So.2d 525, 526 (Fla. 3d DCA 1996). When we consider the cumulative effect of the improper arguments after viewing the entire record, we conclude that the lower court did abuse its discretion and that justice requires a new trial on damages to cure the resulting prejudice.
We have carefully considered the other points on appeal and, for the reasons argued by Appellee in her brief, we cannot conclude that the trial court abused his discretion as to the remaining two issues.
REVERSED AND REMANDED.
GRIFFIN and TORPY, JJ., concur.
SAWAYA, J., dissents without opinion.
NOTES
[1] Appellee introduced the hourly wage evidence to prove her damages for loss of services and support. She introduced evidence of the number of trailers owned by FIDS, and the fact that many were painted with the "Rooms To Go" logo, in an attempt to prove a joint venture between FIDS and R.T.G.