972 So.2d 973 (2007)
CARNIVAL CORPORATION d/b/a Carnival Cruise Lines, Appellant,
v.
Luis PAJARES, Appellee.
No. 3D06-1744.
District Court of Appeal of Florida, Third District.
December 26, 2007.
Rehearing Denied February 7, 2008.
*974 Holland & Knight and Rodolfo Sorondo, Jr. and Rebecca M. Plasencia, Miami, for appellant.
Ginsberg & Schwartz and Arnold R. Ginsberg; Rivkind, Pedraza & Margulies and Brett Rivkind, Miami, for appellee.
*975 Before GREEN, ROTHENBERG, and SALTER, JJ.
ROTHENBERG, Judge.
Crewman Luis Pajares ("Pajares") suffered a stroke while working for Carnival Cruise Lines ("Carnival"). Pajares' claim for failure to provide prompt, adequate medical care was tried and decided adversely to Carnival. Because we conclude that Pajares' counsel's improper comments during closing argument and the comments made by Pajares' witness, Gary Anderson, deprived Carnival of a fair trial, we reverse the trial court's order denying Carnival's motion for new trial.
The evidence presented at trial reveals that Pajares worked for Carnival for five years; that each year he was required to undergo a physical examination and be cleared fit for employment by Carnival's doctors; and that after being declared fit for employment, Pajares suffered a stroke. Pajares claimed that Carnival was negligent for failing to diagnose and treat his hypertension, and that as a result, he suffered a stroke. Carnival's defense was that its doctor counseled Pajares on modifications to his lifestyle, recommending that he maintain a healthy diet, avoid drinking alcohol, and quit smoking. Carnival argued that Pajares' stroke was caused by his twenty-eight years of smoking, and that modification of his lifestyle, rather than medication, was the appropriate treatment, and since Carnival's doctor advised Pajares that he should make these modifications to his lifestyle, Carnival was not negligent. Carnival additionally argued that, at a minimum, because Pajares did not quit smoking as recommended by Carnival's doctor, his conduct was a contributing cause of the stroke, and any damages awarded to Pajares should be reduced accordingly.
In addition to noneconomic damages, Pajares sought damages for the cost of past and future medical care and lost wages. Pajares hired a vocational expert to create a life-care plan, and a forensic economist, Gary Anderson, to calculate Pajares' future economic damages based upon the vocational expert's findings, and to reduce the future damages to their present value.
By stipulation, discovery was closed on August 5, 2005, however, the depositions of Pajares' vocational expert and forensic economist were not taken until two weeks and three weeks, respectively, after discovery had closed. Approximately three months after these depositions were taken, and only one week prior to the trial scheduled for November 28, 2005, Carnival moved to amend its expert witness list to include an economist, who Carnival stated was prepared to offer an alternative life-care plan and to testify as to Pajares' future economic damages based on this alternative life-care plan. The judge assigned to try the case denied Carnival's untimely request, but stated that Carnival could revisit the issue if the case was continued. When the case was subsequently continued to March 2006, Carnival again sought to amend its expert witness list to add its economist. Although Carnival's motions to amend were filed in January 2006, well in advance of the March 2006 trial setting, these motions were denied.

PAJARES' COUNSEL'S IMPROPER COMMENTS DURING CLOSING ARGUMENTS

I. Dr. Diskin
Dr. Arthur Diskin, Carnival's medical director, was listed in discovery and called as a witness at trial. Prior to trial, Pajares moved in limine to preclude Dr. Diskin from testifying as to a ship doctor's standard of care. Because Dr. Diskin was not listed as an expert witness, the trial court granted Pajares' motion in limine. *976 Thus, Dr. Diskin was precluded from testifying as to whether Pajares had received proper care. After obtaining this ruling, Pajares' counsel commented on Dr. Diskin's failure to offer the very testimony he moved in limine to preclude, and which the trial court prohibited Dr. Diskin from offering:
And you know what was appalling, to hear Dr. Diskin sayI almost, I was almost in shock when he said they're too busy to take a blood pressure recording when a crew member comes into the office on the ship. That is appalling, and especially with somebody who has a history like that. I mean, Dr. Diskin, he didn't come in here to say, here's the records, ship's doctors did everything correctly.
(emphasis added).
These comments were improper as counsel implied that Dr. Diskin's failure to offer testimony regarding the standard of care of Carnival's doctors was because Carnival had no favorable testimony to provide. See Wall v. Costco Wholesale Corp., 857 So.2d 975, 976 (Fla. 3d DCA 2003) (holding that defense counsel's comments regarding the plaintiffs failure to call her daughter to testify, where defense counsel knew that the daughter was estranged from her parents and had disappeared, deprived the plaintiffs of a fair trial); Banta v. State, 698 So.2d 860, 864 (Fla. 3d DCA 1997) (granting a new trial where defense counsel, after succeeding in excluding evidence, raised during closing argument the plaintiffs failure to present the evidence defense counsel succeeded in excluding; characterizing defense counsel's action as "the ultimate gotchaism" by "whipsaw[ing] the plaintiff for not producing that very testimony"); Hernandez v. Home Depot U.S.A., Inc., 695 So.2d 484, 485 (Fla. 3d DCA 1997) (holding that defense counsel's argument, that the State failed to call the lead detective in the case because he did not have favorable evidence to present for the State, was disingenuous and misleading, as the defense had successfully prevented the jury from hearing the favorable evidence he was prepared to provide).
These comments were also improper because counsel for Pajares expressed his personal opinions regarding the evidence presented. See Cohen v. Pollack, 674 So.2d 805, 807 (Fla. 3d DCA 1996); Kaas v. Atlas Chem. Co., 623 So.2d 525, 526 (Fla. 3d DCA 1993).
2. Comments suggesting that the type of food Carnival served its crew members was the cause or a contributing factor to Pajares' injury
As stated previously, a major feature of the trial, and Carnival's defense, was that Pajares' failure to adequately modify his lifestyle, for example, his failure to stop smoking, caused his stroke. Although no evidence was presented as to Pajares' diet, including the foods he was offered or ate aboard ship, his counsel suggested to the jury in closing argument that Pajares' diet was within Carnival's control, and asked the jury to speculate as to the food Carnival served its crew.
So, you're on a cruise ship, don't forget that too. Crew members are on cruise ships 9, 10 months a year, 7 days a week, 14 hours working. The only other time they have really is probably to go to sleep. Get whatever sleep they can get. You know, so any kind of food or any kind of diet they eat or anything like that is in the control of the cruise ship. You know what, we haven't had testimony there was fatty foods or high salts that caused it, but if we did, I imagine what they're serving the crew members on board the cruise ships. Think about that. Their diets
(emphasis added).
The prejudice flowing from this improper argument was heightened because the *977 trial court overruled Carnival's objection, which led to an additional comment by Pajares' counsel regarding Pajares' diet being within Carnival's control. The prejudice is obvious where several jurors identified diet as a cause of strokes and two of those jurors were selected and decided this case.

3. Comments regarding the economic disparity between Pajares and Carnival
This Court and the courts of this state have long recognized the danger that jurors might be influenced by evidence of a party's wealth or poverty and sympathize with the financially stricken party. See State Farm Mut. Auto. Ins. Co. v. Revuelta, 901 So.2d 377, 379 (Fla. 3d DCA 2005); Batlemento v. Dove Fountain, Inc., 593 So.2d 234, 242 (Fla. 5th DCA 1991). During closing argument, Pajares' counsel made the following argument:
Now, one of the most unbelievable things that I have ever heard was don't think of who's involved. As if Mr. PajaresMr. Pajares, that's who's involved. This is real life. Of course you have to consider who's involved. And this is a shipping company, is also involved. The company that operates how many cruise ships; how many crew members?
This argument was clearly improper as Carnival's resources were not relevant in determining the issues before the jury, and could only have served to prejudice the members of the jury, who learned through Pajares' presentation of the evidence, that Pajares was relatively poor and that his family had to borrow money and sell a house to provide him with some of the care he received. While we recognize that this comment was not, in itself, so prejudicial as to require a new trial, we conclude that it must be considered in weighing the cumulative effect of counsel's improper arguments.

4. Disparagement of defense counsel and Carnival's defense
The most grievous arguments made by Pajares' counsel are those suggesting that Carnival acted improperly by defending Pajares' claims, and denigrating its defenses. Several times during closing arguments, Pajares' counsel suggested that Carnival was attempting to divert the jurors' attention from the real issue (Carnival's negligence) by raising the issue that Pajares was a smoker. After making this argument several times, counsel declared: "[O]h, now that we know that he smokes some cigarettes, therefore, we want to blame his stroke on that . . ., but now we want this jury to focus on just the fact that he's a smoker, he's a criminal because he smokes." After the trial court sustained Carnival's objection to this argument, Pajares' counsel continued to denigrate Carnival's defense, stating, "They want you to hold it against him just because he smokes."
Carnival's defense was, in part, that the cause of the stroke was Pajares' lifestyle. It was undisputed that Pajares smoked cigarettes for twenty-eight years prior to his stroke and that even after Carnival's doctor advised Pajares to stop smoking, he continued to do so. It was, therefore, improper to argue to the jury that Carnival was doing something wrong in presenting evidence that Pajares smoked and in asking the jury to consider its effect upon Pajares' comparative negligence.
Not only did Pajares' counsel suggest that Carnival acted improperly by presenting a "smoking defense," counsel also argued that Carnival should be punished for defending Pajares' claim at all, stating: "We have a limited amount of time here. We have the right to live happily away from him [sic] by Carnival Cruise Lines. They won't accept responsibility. They won't accept the harm that they have *978 caused him. They are fighting on both. It is time to hold them responsible." (emphasis added).
Arguments similar to those made in the instant case have previously been condemned by this Court. In Carnival Cruise Lines, Inc. v. Rosania, 546 So.2d 736, 737-38 (Fla. 3d DCA 1989), this. Court reversed a judgment in favor of the plaintiffs and ordered a new trial due to comments made by the plaintiffs' counsel disparaging the manner in which Carnival defended the action., In Rosania, the plaintiffs' counsel made the following improper comments:
This is a perfect example of what Carnival Cruise Lines had been doing for the last three years.
. . . .
They want to hide the truth. There are certain companies and organizations that look for a way to taint.
. . . .
I think the evidence shows that they have taken the position that they're going to put roadblock after roadblock after roadblock and say she wasn't fit to make this trip.
. . . .
In putting up roadblocks such as we've seen here through this entire trial, keep in mind when you make a verdict, when you render a verdict, your verdict has to be unanimous. And think about how Carnival Cruise Lines defended this particular case.
Id. at 738 n.l.
In Revuelta, this Court reversed a judgment in Revuelta's favor, where Revuelta's counsel insinuated that State Farm had acted in bad faith in defending the action, rather than paying the benefits. Revuelta, 901 So.2d at 379-80. The arguments made by Pajares' counsel, denigrating Carnival's defense of Pajares' claim and suggesting that Carnival should be punished for contesting liability, are the type of arguments previously condemned by this Court, and are equally condemned in the instant case.
5. Comments regarding the lack of evidence where Pajares' counsel succeeded in excluding the evidence he argued was lacking
Prior to trial, Carnival attempted to amend its expert witness list to include an economist, who Carnival asserted was prepared to offer an alternative life-care plan and expert testimony concerning Pajares' economic damages. Pajares, who objected to the amendment, prevailed and, therefore, Carnival was unable to offer the expert testimony. During examination of Gary Anderson, Pajares' forensic economist, Pajares' counsel improperly elicited testimony from Anderson that no alternative life-care plan was submitted by Carnival. Pajares' counsel asked Anderson whether he would have reviewed an alternative life-care plan if one had been submitted to him, knowing full well that he had not received one, and that the jury would not receive one, based upon the trial court's denial of Carnival's request to present such evidence. In response, Anderson testified: "I anticipated being asked by your office to review a life-care plan and an economic report prepared by an economist retained by the defendant, but I was never asked, to do that because evidently none was ever provided."
The improper question and answer were compounded by Pajares' counsel's comments in closing argument that Anderson's testimony on damages was unrefuted, and that Carnival could have produced its own expert and an alternative life-care plan, but failed to do so.

6. Pajares' counsel's improper "value of life" arguments
In addressing the issue of noneconomic damages, Pajares' counsel offered his suggestions as to how the jury should determine what monetary compensation it *979 should award Pajares for his past and future suffering. Counsel's argument improperly asked the jury to place a monetary value on. Pajares' life by comparing a $20 million Van Gogh painting, "created by one of the greatest artists in history," to Pajares' life, which "was created by the greatest creator there is." This argument was highly improper. See Dufour v. State, 905 So.2d 42, 64 (Fla.2005); Pub. Health Trust of Dade County v. Geter, 613 So.2d 126, 127 (Fla. 3d DCA 1993).
Carnival acknowledges that it failed to timely object to this argument, but urges this Court to find that the argument was so egregious as to constitute fundamental error. Although the argument was clearly improper, we find no fundamental error, and, therefore, we decline to consider this improper argument in deciding whether the cumulative effect of the objected  to improper comments deprived Carnival of its right to a fair trial.
THE SERIOUSNESS AND PERVSIVENESS OF THE VARIOUS IMPROPER COMMENTS REQUIRE REVERSAL
While we recognize that a single improper remark or argument might not be so prejudicial as to require reversal, we conclude that the cumulative prejudicial effect of the improper comments noted herein requires a new trial to protect the overall fairness of the trial court proceedings, and to ensure that Carnival receives a fair trial. See Werneck v. Worrall, 918 So.2d 383, 388 (Fla. 5th DCA 2006) (finding that, although trial courts have considerable discretion on motions for new trial, the trial court abused its discretion by denying the motion where justice requires a new trial based upon the cumulative effect of the improper arguments); Bocher v. Glass, 874 So.2d 701, 704 (Fla. 1st DCA 2004) (concluding that there comes a point where the totality of the errors is so pervasive as to raise doubt as to the overall fairness of the court proceedings); Cohen v. Pollack, 674 So.2d 805, 806 (Fla. 3d DCA 1996) (finding reversible error based upon the cumulative effect of counsel's improper argument that the jury should measure damages by considering pain that the plaintiff endured, and counsel's statements indicating his opinions and beliefs regarding the case).[1]
Reversed and remanded for a new trial.
SALTER, J., concurs.
GREEN, J. (dissenting).
Respectfully, I dissent.
I cannot conclude that the subject arguments made by plaintiffs counsel, when viewed in the totality of the circumstances, rise to that level of cumulative prejudice needed to vitiate the fairness of this eleven day trial. Engle v. Liggett Group, Inc., 945 So.2d 1246, 1271 (Fla.2006). The court sustained all appropriate objections, and the evidence fully supports the jury's verdict. Dozier v. Hodges, 849 So.2d 1094 (Fla: 3d DCA 2003). The comments here were not so highly prejudicial and inflammatory as to deny Carnival Cruise Line a fair trial. See Engle; Dozier; see also Benjamin v. Diel, 831 So.2d 1227 (Fla. 4th DCA 2002).
Trial courts have traditionally been granted great deference in their decisions to grant or deny a new trial based upon improper argument of trial counsel. Tanner v. Beck, 907 So.2d 1190, 1197 (Fla. 3d DCA 2005) (Green, J. dissenting). "The *980 discretionary power to grant or deny a motion for new trial is given to the trial judge because of his/her direct and superior vantage point." Id. (citing Baptist Mem'l Hosp. v. Bell, 384 So.2d 145, 146 (Fla.1980)). The trial court was in the best position to gauge or assess the effect, if any, of these comments in the proceeding below. The order on appeal, therefore, should be affirmed.
NOTES
[1] Based on our finding that the trial counsel's improper comments and arguments require a new trial, we decline to address Carnival's second argument that the trial court reversibly erred in denying its motion to amend its witness list, as there no longer appears to be any impediment to Carnival's requested amendment.