LAGOA, J.
 

 The appellants, Giani Fasani (“Fasani”) and 420 Lincoln Road Associates, Ltd. (“Lincoln”) (collectively “appellants”), appeal from a final judgment entered in favor of the appellee, Christian Kowalski (“Kowalski”). The appellants raise two issues. First, they argue that counsel for Kowalski engaged in improper arguments such that the trial court abused its discretion in denying their motion for a new trial. Second, they assert that the trial court erred in failing to grant their motion for directed verdict on Kowalski’s claim for future medical expenses. We agree with the appellants on both points.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 Kowalski entered an elevator at his workplace, which was located at 420 Lincoln Road, a building owned by Lincoln. The elevator contained granite-tiled walls installed by Fasani. While Kowalski and his co-worker, Harold Salazar, were riding in the elevator, one of the granite tiles separated from the wall and struck Kowal-ski on his head. Kowalski subsequently filed an amended complaint against Lincoln, and Lincoln, in turn, filed a third party complaint against Fasani.
 

 Prior to trial commencing, the appellants admitted liability. The case then proceeded to a four-day trial on the issues of proximate cause and compensatory damages only. Before closing arguments, the appellants moved for directed verdict as to Kowalski’s future medical expenses claim, arguing that Kowalski did not present evidence that was sufficient to justify an award of future medical expenses. This motion was denied.
 

 The jury ultimately awarded Kowalski $413,434.00 in damages. Specifically, the jury awarded $13,434.00 for past medical expenses and $120,000.00 for future medical expenses. Kowalski was awarded no lost wages, and was awarded $30,000.00 for loss of future earning capacity. Lastly, he was awarded $100,000.00 for pain and suffering in the past, and $150,000.00 for future pain and suffering. After the trial court entered final judgment, the appellants each filed motions for a new trial and/or remittitur, arguing that improper comments and arguments made by Kowal-ski’s counsel denied them a fair trial, and that there was no evidence to support the $120,000 award for future medical expenses. The trial court denied the motions, and this appeal ensued.
 

 Counsel’s Improper Opening and Closing Statements During Trial
 

 During opening statements, Kowalski’s counsel stated, over objection: “This is a case about a company, 420 Lincoln Road that wanted to make a couple of extra dollars.” The appellants claim that during closing argument, Kowalski’s counsel’s “theme” was that the appellants simply
 
 *808
 
 wanted Kowalski to go away rather than for them to have done the “right” thing. Kowalski’s counsel stated:
 

 So what did defense counsel do when he took the stand? They ridiculed her [Plaintiffs mother], they made fun of her for giving him aspirin. Well, I would tell you this. If they did the right thing, why didn’t they give him an aspirin. Why didn’t they send him to a doctor instead of just kicking him out on the street like a dog and telling him we’re giving you nothing.... [Objection raised and overruled]. They did nothing for him. They told him, we’re wrong, we shouldn’t have done it, it’s our fault, we did the right thing, we’re giving you nothing. Well, is that really doing the right thing.
 

 * * *
 

 Is that doing the right thing? Giving him nothing and telling him to go away? [Objection raised and overruled].
 

 Kowalski’s counsel then attributed the unsafe condition of the elevator to the appellants’ “corporate arrogance and corporate greed.” He stated:
 

 Members of the jury, what you’ve heard is that this is nothing more than corporate arrogance and corporate greed. They wanted a pretty elevator and they didn’t care who got hurt or how bad it was. And when someone got hurt, they said, you know what, yeah, we made a mistake but we’re not giving you anything. [Objection raised and overruled],
 

 Kowalski’s counsel continued:
 

 Now, members of the jury, you’ve got to understand that the brain is what separates people from animals. It’s what makes us human. I mean I’m sure you’ve all heard the expression, well, he may be old but he still has his mind or memories are what make us who we are. If that was a Picasso painting that was in the elevator and it got ripped, no one would argue with paying $80 million to replace it. Why is it any different when it’s a man’s brain? Why is it any different when it’s a man’s brain who’s had an injury the equivalent to a stroke who’s had post-concussion syndrome, posttrau-matic stress disorder. You heard the kind of symptoms he had. Trouble remembering, trouble concentrating, trouble thinking. He has nightmares, he has migraines. Who would like to go through — that’s the equivalent of having somebody hit you in the head with a baseball bat. Ask a reasonable person, look, how much money would you take for me to hit you in the head with a baseball bat as hard as I can? He didn’t get that choice. Nobody asked him what’s it worth. They just did it. And afterwards we’re giving you nothing. How is that doing the right thing? This is nothing more than corporate arrogance.
 

 [[Image here]]
 

 Members of the jury, you’re the ones that have the power so that they can’t get away with this. It’s up to you. And when you go in the jury room, you’re the ones that can hold them to this. You’re the ones that can make them do the right thing because they haven’t done it on their own and they have no intentions on doing it on their own. You’re going to have to make them do the right thing.
 

 [[Image here]]
 

 Is that doing the right thing? Is that doing the right thing? Well. You know, after we’ve drug him through all this and — [Objection] ... After we’ve gotten through all of this, now all of a sudden it’s, yeah, we’ll agree to that. Is that doing the right thing? Is that taking care of this gentleman?
 

 
 *809
 
 Kowalski’s counsel also referred to defense counsel as “slick” talkers. He further referred to “corporate greed” when discussing the totaling of damages with the jury:
 

 Finally you’re going to be asked to total up those damages. And that’s going to be a question for you to decide. That’s going to be a question for you to decide. Did they do the right thing or are you going to make them do the right thing? Because I would submit that having a stone fall on someone’s head because you want a pretty elevator and then when he gets seriously hurt to the point he’s retarded, you just kick him out and say we’re giving you nothing.
 

 [Objection].
 

 How is that doing the right thing? It’s corporate greed, corporation arrogance.
 

 [Objection].
 

 ⅜ * *
 

 Members of the jury, this is up for you to decide. This is now in your hands and I trust that you’ll do the right thing."
 

 In addition, Kowalski’s counsel commented during closing argument that the scene had been tampered with:
 

 You also heard Mr. Salazar tell you somebody rushed in there and tried to clean up the blood. Now you’ve heard a lot of testimony that, well, nobody could have gotten back in time to have cleaned up that blood because he ran to get the camera, but he took this picture right then. Obviously somebody came in there and did something. And you’re going to see the pictures yourself, you’re going to have them in front of you. And you can see in many of the pictures where the blood is smeared in the doorway where somebody came in there and tried to clean it up. Somebody tried to get it up before he could come back with a camera. But they couldn’t get it all, it was too much. You heard Harold tell you it was everywhere. He had to help his friend who was staggering because of this, carry him out, call the EMS, got some towels for him. They did the right thing?
 

 II.
 
 STANDARD OF REVIEW
 

 An appellate court reviews a trial court’s denial of a motion for new trial for an abuse of discretion.
 
 Brown v. Estate of Stuckey,
 
 749 So.2d 490, 498 (Fla.1999);
 
 Parisi v. Miranda,
 
 15 So.3d 816, 817 (Fla. 4th DCA 2009);
 
 SDG Dadeland Assocs., Inc. v. Anthony,
 
 979 So.2d 997, 1001 (Fla. 3d DCA 2008). “A trial court’s discretion regarding counsel’s improper arguments to the jury is guided by whether the comments and arguments were ‘highly prejudicial and inflammatory.’ ”
 
 SDG Dadeland,
 
 979 So.2d at 1001 (quoting
 
 Hagan v. Sun Bank of Mid-Florida, N.A.,
 
 666 So.2d 580, 585 (Fla. 2d DCA 1996),
 
 disapproved of on other grounds by Murphy v. Int’l Robotic Sys., Inc.,
 
 766 So.2d 1010, 1013 (Fla.2000)).
 

 The appellants argue that Kowalski’s counsel’s improper comments and arguments were so prejudicial and inflammatory as to deny them a fair trial. Given that the appellants admitted liability prior to trial, we agree with the appellants. We will address the most egregious statements made by Kowalski’s counsel. Indeed, because liability was admitted, this trial should have been a trial solely on damages. Instead, it became a wide-ranging attack on the appellants unrelated to the calculations of Kowalski’s damages.
 

 III.
 
 ANALYSIS
 

 A.
 
 Improper Arguments
 

 The law is clear that it is improper for an attorney to disparage an opposing party’s defense of a case or to suggest that a party should be punished for contesting a claim.
 
 Carnival Corp. v. Pa-
 
 
 *810
 

 jares,
 
 972 So.2d 973 (Fla. 3d DCA 2007). Here, Kowalski’s counsel did both. Counsel characterized the appellants’ treatment of Kowalski as “kicking him out on the street like a dog,” “kick[ing] him out and sayfing] we’re giving you nothing,” and of having “drug him through all of this.” Counsel repeatedly argued, over objection, that the appellants had refused “to do the right thing” despite knowing “it’s our fault.” Counsel attributed this behavior and the condition of the elevator to the appellants’ “corporate greed and arrogance” because the appellants “wanted a pretty elevator and they didn’t care who got hurt or how bad it was. And then when someone got hurt, they said, you know what, yeah, we made a mistake but we’re not giving you anything.”
 

 In order to rectify the appellants’ “corporate greed and corporate arrogance” and refusal to “do the right thing,” Kowal-ski’s counsel argued to the jury that it would have to “make them do the right thing because they haven’t done it on their own and they have no intentions on doing it on their own. You’re going to have to make them do the right thing.” In essence, counsel was arguing that the jury had to punish the appellants.
 
 [1]
 
 Kowalski’s counsel’s comments denigrated the appellants’ defense, suggested that they needed to be punished, and served no purpose other than to inflame and prejudice the jury. Such arguments are improper.
 
 Pajares,
 
 972 So.2d at 977;
 
 accord State Farm Mut. Auto. Ins. Co. v. Revuelta,
 
 901 So.2d 377, 380 (Fla. 3d DCA 2005).
 

 As noted above, Kowalski’s counsel repeatedly commented, over objection, that the appellants were motivated by “corporate greed and arrogance.” Indeed, Kow-alski’s counsel began his opening statement by arguing: “This is a case about a company, 420 Lincoln Road, that wanted to make a couple of extra dollars.” “Corporate greed,” however, was not relevant to any issue in the case; there was no evidence that the appellants installed the granite in the elevator in a way to sacrifice safety in favor of aesthetics. Kowalski’s counsel further contrasted the appellants’ “corporate greed and arrogance” in “want[ing] to put beauty over safety” with Kowalski, who was “just a simple man trying to get by. Not trying to get anything from anybody.” As this Court stated in
 
 Pajares,
 
 972 So.2d at 977, this argument concerning the economic disparity between the parties is “not relevant in determining the issues before the jury, and could only have served to prejudice the members of the jury.”
 
 See also Chin v. Caiaffa,
 
 42 So.3d 300 (Fla. 3d DCA 2010). Accordingly, as with counsel’s comments denigrating the appellants’ defense, we find these objected-to comments to be inflammatory and prejudicial.
 

 Further, regarding an award of non-economic damages, Kowalski’s counsel suggested that the jury compare Kowal-ski’s brain to a damaged Picasso painting.
 

 Now, members of the jury, you’ve got to understand that the brain is what separates people from animals. It’s what makes us human. I mean I’m sure you’ve all hear the expression, well, he may be old but he still has his mind or memories are what make us who we are. If that was a Picasso painting that was in the elevator and it got ripped, no one would argue with paying $80 million to replace it. Why is it any different when it’s a man’s brain?
 

 This Court has previously stated that such “value of life” arguments are improper.
 
 Chin,
 
 42 So.3d at 309;
 
 Pajares,
 
 972 So.2d at 979 (improper to compare plaintiffs life
 
 *811
 
 to a Van Gogh painting);
 
 Pub. Health Trust of Dade County v. Geter,
 
 613 So.2d 126, 127 (Fla. 3d DCA 1993) (counsel’s argument that jury should place a monetary value on decedent’s life “just as a monetary value is placed on an eighteen million dollar Boeing 747 or an eight million dollar SCUD missile — was improper, highly inflammatory, and deprived defendant ... of a fair trial on the issue of damages”). Immediately following counsel’s improper “value of life” argument, Kowalski’s counsel also asked the jury to consider “how much money would you take for me to hit you in the head with a baseball bat as hard as I can?” He concluded his request for non-economic damages by repeatedly referring to Kowalski as “retarded:”
 

 [Wjhat’s it worth to go from a normal person to a retarded person for the rest of your life? What’s that worth? ... [A] man that went from normal, social, making friends to a retarded person now? ... Because I would submit that having a stone fall on someone’s head because you want a pretty elevator and then when he gets seriously hurt to the point he’s retarded, you just kick him out and say we’re giving you nothing.
 

 Although the appellants did not object to the argument that the jury should compare Kowalski’s brain to a Picasso painting, we find that this constitutes improper argument, when viewed in the overall context of describing Kowalski as “retarded” and asking the jury to consider how much money a reasonable person would accept to be hit in the head with a baseball bat, and we consider it in determining whether the cumulative effect of the objected to comments deprived the appellants of a fair trial.
 

 Finally, Kowalski’s counsel also implied that the appellants had tampered with evidence at the scene of the accident, by stating:
 

 And you can see in many of the pictures where the blood is smeared in the doorway where somebody came in there and tried to clean it up. Somebody tried to get it up before he could come back with a camera. But they couldn’t get it all, it was too much....
 

 In essence, Kowalski’s counsel implied that the appellants tried to hide evidence at the scene, based upon nothing other than speculation. There was no evidence presented below that the appellants had tampered with or altered the scene of the accident. Indeed, the condition of the elevator after the accident was not relevant to any issue at trial, as the appellants had already conceded liability. And, although this argument was not objected to below, we note that this sort of argument has been repeatedly condemned by this Court and found to “fall squarely within that category of fundamental error — requiring no preservation below — in which the basic right to a fair and legitimate trial has been fatally compromised.”
 
 Kaas v. Atlas Chem. Co.,
 
 623 So.2d 525, 526 (Fla. 3d DCA 1993).
 
 See also SDG Dadeland,
 
 979 So.2d at 1003 (Fla. 3d DCA 2008) (finding fundamental error in counsel’s comments accusing defense counsel of perpetuating a fraud upon the court by hiding evidence);
 
 Johnnides v. Amoco Oil Co.,
 
 778 So.2d 443, 445 (Fla. 3d DCA 2001);
 
 George v. Mann,
 
 622 So.2d 151, 152 (Fla. 3d DCA 1993).
 

 Although “a single improper remark or argument might not be so prejudicial as to require reversal,”
 
 Pajares,
 
 972 So.2d at 979, we find here that the cumulative effect of Kowalski’s counsel’s numerous improper comments and arguments operated to deprive the appellants of a fair trial.
 
 See Muhammad v. Toys “R” Us, Inc.,
 
 668 So.2d 254, 259 (Fla. 1st DCA 1996) (“[T]he collective import of counsel’s personal in-
 
 *812
 
 jeetions, and irrelevant and inflammatory remarks, was so extensive as to have prej-udicially pervaded the entire trial, precluding the jury’s rational consideration of the evidence and resulting in an unfair trial.”). Accordingly, a new trial is warranted.
 

 B.
 
 Insufficient Evidence of Future Medical Expenses
 

 We now turn to the second issue raised on appeal—whether the trial court erred in failing to grant a motion for directed verdict on Kowalski’s claim for future medical expenses. We review a trial court’s ruling on a motion for directed verdict
 
 de novo. Diaz v. Impex of Doral, Inc.,
 
 7 So.3d 591, 593 (Fla. 3d DCA 2009). In reviewing a trial court’s denial of a motion for directed verdict, this Court is required to view the evidence in the light most favorable to the nonmoving party.
 
 Olsten Health Services, Inc. v. Cody,
 
 979 So.2d 1221, 1223 (Fla. 3d DCA 2008). “A directed verdict is proper only when the record conclusively shows an absence of facts or inferences from facts to support a jury verdict.”
 
 Schreidell v. Shoter,
 
 500 So.2d 228, 232 (Fla. 3d DCA 1986);
 
 see also Posner v. Walker,
 
 930 So.2d 659, 665 (Fla. 3d DCA 2006).
 

 Moreover, concerning an award of future economic damages, such an award is appropriate only “when such damages are established with
 
 reasonable certainty.” Auto-Owners Ins. Co. v. Tompkins,
 
 651 So.2d 89, 91 (Fla.1995) (emphasis added);
 
 accord Loftin v. Wilson,
 
 67 So.2d 185, 188 (Fla.1953) (“In every case, plaintiff must afford a basis for a reasonable estimate of the amount of his loss and only medical expenses which are reasonably certain to be incurred in the future are recoverable.”).
 

 It is a plaintiff’s burden to establish that future medical expenses will more probably than not be incurred.
 
 Kloster Cruise Ltd. v. Grubbs,
 
 762 So.2d 552, 556 (Fla. 3d DCA 2000). “That burden may only be met with competent substantial evidence.”
 
 Id.
 
 There must be “evidence in the record from which the jury could, with reasonable certainty, determine the amount of medical expense [plaintiff] would be likely to incur in the future.”
 
 DeAlmeida v. Graham,
 
 524 So.2d 666, 668 (Fla. 4th DCA 1987). A mere possibility that certain treatment might be obtained in the future cannot form the basis of an award of future medical expenses.
 
 Truelove v. Blount,
 
 954 So.2d 1284, 1288 (Fla. 2d DCA 2007);
 
 accord Nevarez v. Friskney,
 
 817 So.2d 856, 858 (Fla. 5th DCA 2002) (holding that an award for future medical expenses was not supported by the evidence, because even though plaintiff presented expert testimony regarding possible need for future surgery, she presented no evidence regarding the cost of any future surgery and further testified that she would not have the surgery).
 

 Here, the jury awarded Kowalski $120,000 in future medical expenses. Kowalski relies upon the testimony of Dr. Nedd, the medical report of Dr. Rosen-kranz, and his own testimony to justify this award.
 
 [2]
 
 Specifically, Dr. Nedd testi
 
 *813
 
 fied that he would strongly recommend that Kowalski obtain neuropsychological testing and a possible evaluation by a psychiatrist. This testimony does not establish with “reasonable certainty” that Kow-alski will need this treatment in the future, nor does it provide any basis on which a jury could determine an amount for this treatment. Similarly, a medical report prepared by Dr. Rosenkranz
 
 [3]
 
 stated that Kowalski “will require further care for ex-acerbations of his symptoms and a cervical MRI is indicated to further assess the extent of joint damage. He additionally should seek psychological counseling.” This testimony does not establish the extent or nature of the “further care” recommended, how often Kowalski would need this treatment in the future, or a basis to determine an amount of expenses. Finally, Kowalski relies upon his own testimony that in the past, he attempted to seek treatment but did not do so because it would have cost between $600 to $750, which he could not afford.
 
 [4]
 
 This testimony, however, presents evidence of past treatment only. It does not establish a need for future treatment, and in no way constitutes evidence of a quantified amount of future medical treatment. As such, it cannot constitute a basis from which a jury could determine an amount of future medical expenses Kowalski would incur.
 

 Accordingly, because there was no competent substantial evidence presented below that Kowalski was reasonably certain to incur future medical expenses or to determine the amount of those expenses, we conclude that the trial court erred in denying the appellants’ motion for directed verdict on this issue. Accordingly, we strike that portion of the jury award.
 

 For the above reasons, we reverse and remand for a new trial solely on the issues of past medical expenses and past and future pain and suffering.
 
 [5]
 

 Reversed and remanded.
 

 [1]
 

 . To be clear, Kowalski was not seeking punitive damages.
 

 [2]
 

 . In his closing argument, Kowalski's counsel asked for $90,000 in future medical expenses, arguing as follows:
 

 Well, you heard Dr. Nedd say he’s going to need future medicals, you’re going to have the reports in evidence where Dr. Rosen-kranz says he needs future medicals. That’s going to be for you to decide. You heard Mr. Kowalski tell you they wanted 650 just to get him in the door somewhere. So how much is that going to be for the rest of his life for medicines, for therapy, for doctor appointments, for CT scans, MRIs? 2,000, 3,000 a year? That’s going to be for you to decide. I would suggest to you 3,000 a year. At 3,000 a year just even if he
 
 *813
 
 only lived 30 years, that's $90,000. And that’s what I would suggest you put in for medical expenses.
 

 [3]
 

 . The trial court struck Dr. Rosenkranz as a witness, but his medical report was admitted into evidence.
 

 [4]
 

 . Kowalski did not present a copy of an invoice or any other proof for this estimate. Nor did he testify as to the type of medical treatment he sought or from whom. The specific testimony upon which Kowalski relies for this point is as follows:
 

 Q. And after the 26th, sir, when you had the sutures taken out, the stitches that they put in there, at the clinic that you told us about, did you get any medical care whatsoever until you went to see Dr. Rosenkranz nine months later? Any medical care whatsoever?
 

 A. I — -just like I said, I took that medication my mom instructed me on the phone and I — I tried to get like help from a doctor and it was like — I did not have a lot of money and a lot of doctors said like that it is like—
 

 MR. McCAUSLAND: Let me just object, Judge. It's a hearsay statement what anybody else would have said to him.
 

 THE COURT: Overruled.
 

 THE WITNESS: So I — they said to me it's like 600 or $750 to get in the door and I — I had no health insurance and I — I—and that's — yeah, that’s pretty much what happened.
 

 [5]
 

 .We affirm the jury’s award regarding lost wages and loss of future earning capacity.