# Third District Court of Appeal

## State of Florida

Opinion filed August 30, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-290
Lower Tribunal No. 12-41665

_____

**Hortensia Martin, et al.,**
Appellants,

vs.

**Jorge Jose Sowers, M.D.,**
Appellee.


An appeal from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

Philip D. Parrish, P.A. and Philip D. Parrish; The Law Offices of Maria L. Rubio, P.A. and Maria L. Rubio, for appellants.

Shannin Law Firm, P.A. and Nicholas A. Shannin, B.C.S. (Orlando); Lubell Rosen, LLC and Stephen L. Lubell (Ft. Lauderdale), for appellee.


Before SUAREZ, SALTER, and LUCK*, JJ.

SUAREZ, J.

_____

* Judge Luck did not participate in oral argument.

Appellant Hortensia Martin ("Martin") and her husband and son appeal judgment in favor of Appellee Jorge Jose Sowers, M.D. after jury trial. We reverse finding that the trial court erred in not granting summary judgment in favor of Appellants on the issue of the statute of limitations.[1] The trial court's failure to do so then allowed Appellee to inadvertently cloud the issues before the jury by enabling him to consistently argue that Martin had knowledge of her injury outside the scope of the statute of limitations and to engage in a closing argument which misled the jury as to the nature of the injury sued for. The cumulative effect of those arguments constituted harmful error subject to reversal under Vargas v. Gutierrez, 176 So. 3d 315 (Fla. 3d DCA 2015) and Murphy v. Int'l Robotic Sys., Inc., 766 So. 2d 1010 (Fla. 2000).

In July 2008, when Martin was 35 years old, she had a mammogram which was interpreted by Appellee, a radiologist. During the proceedings at issue, Appellee gave a deposition in which he admitted that in 2008 he "had a high degree of suspicion that Martin had malignant breast cancer; that there was a better than 70% probability that the suspicious speculated mass he observed on the

---

[1] At a minimum, the trial court should have granted Appellants' Motion for Directed Verdict on the issue, but we believe the granting of that motion would have come too late in that Appellee's argument had already misled and confused the jury about the injury Martin claimed. The same is true with respect to Appellants' claim regarding the jury instructions – at a minimum the trial court should have allowed the instruction as requested, but such ruling would have come after the jury was already misled.

mammogram was cancer." However, Appellee did not communicate that suspicion to Martin, or her then-primary care physician. Instead, Appellee merely noted a nodule on the mammogram and recommended that an ultrasound be performed. Appellee's report on the mammogram did not use any language typically used to inform the referring physician that there was any sort of "non-routine" finding.

In October 2008 Martin changed her primary care physician. In November 2008 Martin received notice from Appellee's practice group that she needed to have follow-up studies to her July mammogram. When Martin contacted Appellee's office for a copy of the mammogram, no one informed her that there was any suspicion of breast cancer. The record below contains some evidence that in November 2008 Martin experienced some breast pain.

In April 2009 Martin's new primary care physician ordered an ultrasound of Martin's breast and did not report any problems with that ultrasound. That physician saw Martin in April, May and June 2009 and then left the practice group. In April 2010 another ultrasound was performed on Martin and a suspicious lesion was found. In May 2010 Martin was first informed that she had breast cancer after a biopsy was performed on the lesion. In August 2010 an MRI confirmed that Martin had lesions on her spine and an October 2010 biopsy of the bone lesion confirmed that Marin has metastatic disease in her bones. Martin has undergone

radiation and chemotherapy and has had no recurrence of breast cancer, but the metastatic cancer in her bones has never gone into remission and is progressing.

After properly filing for extensions of the statute of limitations and serving medical malpractice pre-suit notices as required under Florida Statute Section 766.106 (2010), Martin and her husband and son filed suit against Appellee in October 2012. From the beginning of the action Appellee attempted to argue that Martin's injury arose in November 2008 when she experienced some breast pain and that the statute of limitations on any claim against Appellee expired before the pre-suit filings were made. Despite Appellants' opposing arguments that her theory of the case was that the claim arose when the cancer appeared in other parts of her body, and despite contrary controlling case law,[2] the trial court concluded that the identity of Martin's injury was a jury question. This was error under the undisputed facts of this case.

The pleadings in this case make clear that Martin's actual claim was **not** that any healthcare professional caused her to have breast cancer as the trial court appears to have understood. Instead, her actual injury was the spread of that

[2] Johnson v. Mullee, 385 So. 2d 1038 (Fla. 1st DCA 1980) (medical malpractice cause of action arose when cancer appeared in other parts of body); Wroy v. North Miami Med. Ctr., Ltd., 937 So. 2d 116 (Fla. 3d DCA 2006) (diagnosis of breast cancer without any proof of spreading of the cancer not actionable). See also, Tanner v. Hartog, 618 So. 2d 177 (Fla. 1993) ("knowledge of the injury as referred to in rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice.").

cancer to her bones and Appellee conceded below that if Martin's claim was the spread of metastatic cancer to her bones, he would lose his claim on the statute of limitations.[3] Appellee's continual argument that Martin suffered pain in November 2008 and that her claim therefore arose at that time simply did not address Martin's actual claim and rested upon the theory that Martin knew of her metastatic injury **before** she even knew she had breast cancer. The trial court continually expressed confusion as to the injury claimed by repeatedly questioning why Martin's injury was not simply the breast cancer – or, as argued by Appellee, the nodule that was discovered in October 2008. The trial court even went so far as to state "If I accept your version, then I must grant your directed verdict."

Because the time-line was undisputed as to the date on which Martin first learned she had breast cancer and as to the date on which she first learned that she had metastatic cancer in her bones, the trial court should have granted Martin's motion for summary judgment on Appellee's defense of statute of limitations. Martin properly filed pre-suit notices and automatic extensions of time in 2011 and 2012 and the filing of her Complaint in October 2012 was undisputedly within the two-year statute of limitations – as extended – of the discovery of her metastatic cancer in August 2010. To paraphrase the Court in <u>Johnson v. Mulee</u>, 385 So. 2d

---

[3] <u>See</u>, TR. 1284 "[APPELLEE'S COUNSEL]: …. Did she know she had metastatic cancer by that date? Of course not. I'm not arguing that she did. **If that is the standard, I lose. If she had to know she had metastatic cancer prior to that date, then I lose. I'm going to be the first one to admit that.** …

1038 (Fla. 1st DCA 1980), the discovery of cancer in other parts of her body was the actual event that triggered the statute of limitations in this case. "[S]ince no injury was discovered until [the MRI] and since there is no evidence that injury should have been discovered by [Martin] prior thereto with the exercise of diligence, the cause of action likewise was not discovered until that time. [Martin] could not have discovered a cause of action prior to discovering she had been injured." Id. at 1041.

Moreover, even if the breast pain Martin suffered in 2008 was evidence of breast cancer – which the record does not demonstrate -- her breast cancer is not – and could not be – the injury for which Martin and her family sued Appellee. Wroy v. North Miami Medical Center, Ltd., 937 So. 2d 116 (Fla. 3d DCA 2006) (failure to diagnose breast cancer not cognizable medical malpractice claim where appellant failed to submit any evidence that the failure decreased life expectancy).

Thus, Martin was entitled to summary judgment on the issue of the statute of limitations. Moreover, the denial of her motion on that issue is not moot as argued by Appellee because its denial allowed Appellee to make arguments which then misled the jury throughout the trial as to the nature of Martin's claim. Appellee repeatedly directed the jury's attention to the issue of what Martin knew and when she knew it – questions wholly unrelated to the issue of the spread of cancer to her bones and questions which should not have been discussed with the jury where

6

Appellee stipulated that Martin was not comparatively negligent. Appellee's

closing argument[4] is strong evidence of Appellee's arguments that confused the

[4] The pertinent portions of Appellee's closing arguments stated:

> So now we get to the statute of limitations. So question number two is a statute of limitations question and here it goes: Did Hortensia Martin know or by the use of reasonable care should she have known on or before April 29, 2009 that she had sustained an injury, loss, or damage and that there was a reasonable possibility that the injury, loss or damage was caused by medical negligence. ….
>
> There's a statute of limitation. The statute of limitations begins to run, it's triggered – if you imagine a stopwatch, it starts the moment these two things happen, the things that are the second part of the question; One she knew or should have known she sustained an injury, and two, that she knew or should have known it was a reasonable possibility that the injury, loss, or damage was caused by medical negligence. The moment those two things start, the statute begins to run. That's the way it works. It doesn't say the lawsuit has to be filed by that date. It says those two things have to have occurred prior to that date, April 29, 2009.
>
> So answering this question is very simple. We need to simply answer this question. … First of all, let's talk about the first prong. Had she sustained an injury, loss, or damage. Okay. Let's talk about that. What is injury, loss or damage? Is metastasized cancer injury, loss or damage? Yes. Of course it is. **But does it say in the question that she has to have sustained metastasized cancer? No, it does not.** The question simply says: Had she sustained injury. It doesn't say had she sustained the injury. It says sustained injury, loss or damage. [e.s.]

jury as to what was at issue in the case.  Because of the trial court's incorrect

I will tell you the Court carefully picks the words for each question that's on this verdict form.  These are the words and this is done by the Judge and the Judge picks these words because these are the words that are appropriate and these – this is the question and if you answer a question that's not here, you are not doing your job.  You've got to answer the question that's here.  Had she sustained injury.

**So what is the injury.  Well that's very simple, right?  We know – we know – the first onset of injury she had in this case, what was it?  She had a breast mass that caused pain.  Well that's not – that's not the ultimate injury.  You're a hundred percent right.  It's not.  A breast mass that caused pain.** …

[N]ot a single complaint up to June 2008.  And then what happens?  She goes for a mammogram, she gets her mammogram report, and then she starts to develop pain.  Prior to that she was asymptomatic, meaning no pain, and now she develops pain.  So we have to prove this.  So remember at the beginning I told you – we're going to talk about evidence and we're going to talk about medical records.  Well let's talk about medical records[.]  I am going to have some medical records I am going to show you that will prove that she had pain prior to this date.  …

So this is the history and this date is June 2010 – June 4th 2010, and it says right here:  Patient reports a one and a half year history of right breast mass associated with pain.  Do the math.  That gets you to 12/04/20[08].  It not just pain.  It's not just breast mass.  It's breast mass associated with pain.  She didn't have that at any time with [the first primary care physician].  None whatsoever.  And then what happens?  November she's told she has a nodule and then shortly thereafter, just a few weeks, she starts to develop pain.  Oh my God.  Oh my God.  Right in the spot where they told me I have a

ruling, Appellee repeatedly informed the jury that because Martin had breast pain in 2008 and that breast pain was documented in medical records, he had proven that the statute of limitations had run on any claim Martin had against Appellee. Again, that is simply not the claim made and is mischaracterization of the record. Additionally, Appellee objected to an accurate description of the claimed injury being placed in the jury instructions and then argued to the jury that the absence of such a description was "carefully picked" by the trial court, again misleading the jury.[5] The focus of Appellee's argument and his repeated misstatements as to what Martin was claiming and when she had actual knowledge[6] of her injury were sufficiently egregious to warrant reversal despite the absence of objection by

---

nodule, now I am developing pain. **The statute/trigger has been set because it is prior to April 29, 2009.** June – December 2008 is prior to April 2009. **The trigger has been set. She knows she has pain. She admits it to the surgeon a year and a half later. …**

**We have two medical records, absolute uncontroverted medical evidence, that shows she has breast pain prior to that date. <u>That answers question number one. There you go. You've got your question to – answer to—number one. I proved it.</u>**

TR. 1496-1503.

[5] This argument is analogous to those made and reversed in <u>Carnival Corp. v. Pajares</u>, 972 So. 2d 973, 977-978 (Fla. 3d DCA 2007) and <u>Hernandez v. Home Depot, U.S.A., Inc.</u>, 695 So. 2d 848 (Fla. 3d DCA 1997).

[6] <u>Tanner v. Hartzog</u>, 618 So. 2d 177, 181 (Fla. 1993) (knowledge of injury includes knowledge that it could have been caused by medical malpractice).

Martin. Those comments went directly to the heart of the case and constituted fundamental error which deprived Martin of a fair and impartial trial. Fasani v. Kowalski, 43 So. 3d 805, 811 (Fla. 3d DCA 2010) (cumulative effect of numerous improper comments and arguments operated to deprive appellants of fair trial); Chin v. Caiaffa, 42 So. 3d 300, 309 (Fla. 3d DCA 2010) (inflammatory and prejudicial comments and improper conduct required reversal); SDG Dadeland Assocs., Inc. v. Anthony, 979 So. 2d 997 (Fla. 3d DCA 2008); Kaas v. Atlas Chem. Co., 623 So. 2d 525, 526 (Fla. 3d DCA 1993).

In light of our reversal, we do not specifically address the additional claims raised by Appellant. However, in any re-trial which may occur in this matter, it should be noted that expert testimony is required before a claim of third-party causation may be presented to the jury in the context of a medical malpractice claim. Gooding v. University Hospital Building, Inc., 445 So. 2d 1015 (Fla. 1984); Chaskes v. Gutierrez, 116 So. 3d 479 (Fla. 3d DCA 2013).

Based on the cumulative errors discussed above, we reverse and remand for further proceedings consistent with this opinion.

SALTER, J., concurs.

LUCK, J., dissenting:

The majority opinion concludes that the combination of the trial court denying Mrs. Martin's motions for summary judgment and directed verdict on the statute of limitations defense, and Dr. Sowers' closing argument comments about the same defense, confused the jury about the nature of Mrs. Martin's injuries such that it reached the level of fundamental error. To me, these errors were not the "exceedingly rare" kind that are "so significant that it deprived one party of the right to a fair trial and due process." Coba v. Tricam Indus., Inc., 164 So. 3d 637, 646 (Fla. 2015). I respectfully dissent.

The jury in this medical malpractice case was not affected by the statute of limitations errors alleged by Mrs. Martin because it answered no when asked whether there was negligence on the part of Dr. Sowers that was the legal cause of Mrs. Martin's injury, loss or damage. Letting the jury hear evidence and argument about the statute of limitations defense did not deprive Mrs. Martin of her right to a fair trial because the jury did not decide the statute of limitations issue. The jury stopped after the first question on the verdict form which asked about Dr. Sowers' negligence. Having found Dr. Sowers not negligent, the jury did not consider the statute of limitations defense, which was the second question on the verdict form. See Rosenfeld v. Seltzer, 993 So. 2d 557, 560 (Fla. 4th DCA 2008) ("That being the case, the jury would not have considered the negligence of the child unless it

11

first found negligence of Mr. Seltzer, which it failed to do. Because the jury did not reach the question of comparative negligence, any error in the giving of the instruction on section 316.130(8) was harmless."); <u>Aetna Cas. & Sur. Co. v. Seacoast Transp. Co.</u>, 528 So. 2d 480, 481 (Fla. 3d DCA 1988) ("Next, Dolphin cites error in the trial court's giving an instruction on comparative negligence. We find no merit in its position. . . . More significant, however, is the fact that the jury did not reach the issue of Dolphin's comparative negligence. The jury returned a special verdict finding no negligence on the part of Seacoast. Thus, it is evident the jury did not address the question of Dolphin's comparative negligence and no error appears. (citations and footnote omitted)).

Dr. Sowers' confusing closing argument about Mrs. Martin's injury (breast cancer vs. the metastasized cancer to the bones, quoted at length in footnote four), likewise, did not impact whether Dr. Sowers was negligent in missing or delaying the diagnosis, which was the first question the jury was asked and the only one it answered. There was independent competent substantial evidence (Dr. Hurwitz's expert testimony, for example), having nothing to do with the statute of limitations defense, supporting the jury's verdict that Dr. Sowers radiology services met the standard of care.

In other words, whatever injury resulted – breast cancer or the spread of breast cancer to Mrs. Martin's bones – it did not affect the issue ultimately decided

by the jury: whether Dr. Sowers' radiology decisions in July 2008 were negligent. Because one has nothing to do with the other, I cannot say that the statute-of-limitations-defense errors deprived Mrs. Martin of due process and a fair trial for fundamental error purposes on the negligence verdict. The errors being harmless, I would affirm the judgment for Dr. Sowers.