SAWAYA, J.
 

 The issue we must resolve is whether the trial court erred in denying the motion for mistrial made by the plaintiff, Robin
 
 *1194
 
 Samuels, after defense counsel disclosed to the jury during opening statement how little the defendant, William Torres, earned in income.
 
 [1]
 
 This issue arises from the appeal of a final judgment awarding Samuels damages in the amount of $70,873.33 in her personal injury action against Torres.
 
 [2]
 
 Samuels argues that disclosure of Torres’ income entitles her to a new trial because it improperly roused the jury’s sympathy in favor of Torres, which resulted in an inadequate award of damages for her injuries. Based on the facts and circumstances of this case, we agree and reverse for a new trial on the issue of damages.
 

 The injuries incurred by Samuels resulted from an automobile accident. Liability was not an issue in the trial proceedings because Torres stijoulated that on June 23, 2006, he struck the Samuelses’ vehicle from behind with his semi-truck, forcing their vehicle and attached trailer into a guardrail, thus damaging their vehicle and destroying the contents of their trailer. Samuels was a passenger in the vehicle driven by her husband; both were wearing their seatbelts.
 

 The trial commenced, and counsel for Torres twice made improper comments regarding his client’s inability to pay a judgment. During the voir dire proceeding, he stated that Torres, not insurance, was responsible for paying a judgment.
 

 Okay, there is no concept of insurance here today. In fact, you’re going to be asked by the Plaintiffs to award a sum of money to the Plaintiffs, he’s responsible for it. Twenty days after a judgment, once the Judge signs that Order, he’s ultimately responsible to pay it. There is no concept of any insurance in this matter. He’s responsible to pay it. Whatever amount of money they ask for, whatever amount of money you end up — you may end up giving them nothing, or you may end up giving them a dollar or 50,000 or whatever it is; ultimately, Mr. Torres is responsible to pay.
 

 The court granted Samuels’ motion for mistrial. Voir dire proceedings commenced again with another jury panel. A jury was selected, and opening statements were presented.
 

 The second improper statement, which is the basis for this appeal and our decision in this case, was made when counsel for Torres presented his opening statement and told the jury:
 

 To give you a little bit of background information on Mr. Torres, he was born — lives in Sorrento, Florida, he’s a widower, he was born and raised in the Orlando area. He is a truck driver by his profession. That is what he does for his living. He owns his own truck. Yesterday you heard me talk about when I was asking some of the truck drivers what’s an owner/operator. An owner/operator is a person who owns a truck and a trailer, he does work for whoever he can get the work from. And that’s what Mr. Torres did in the years before this accident and currently does. And he’s responsible for all of his own gas, his own maintenance, his own repair, his truck payment. And after all is said and done, in a good week traveling in this area with what he does, car carrying, you’ve probably seen them, the double-decker car carriers, he loads them up from one dealership, brings them to a warehouse, brings them to an auction; in a good week he may make $1,500. And after paying all that gas money and everything that’s neces
 
 *1195
 
 sary, gets a profit of about maybe 40 percent of that sum of money.
 

 (Emphasis added). Samuels’ counsel immediately objected and, at a bench conference outside the hearing of the jury, requested a curative instruction. The objection was sustained and the request for a curative instruction was denied.
 

 Simultaneous with the bench conference, the bailiff told the court that a juror was crying and upset. The judge sent the jury out for a break and inquired why the juror was crying. The crying juror explained: “It was just that I never been in a setting like this before. It’s just new to me, just sitting here listening to their stories, some of its sad.”
 

 Samuels’ counsel moved for a mistrial, arguing, “Putting ability to pay like that before a jury, that is the sort of thing the bell is rung, you can’t unring it, telling the jury the man makes how much and clears so much, obvious implication that he cannot respond to a judgment like this.” The court observed, “I’ve never had anybody put that before a jury before.” However, the court expressed concern about the ramifications of a second mistrial. Instead of ruling on the motion for mistrial, the court took the motion under advisement and resumed opening statements. The trial court subsequently denied the motion.
 

 During the trial, Samuels presented significant evidence of permanent injuries to her cervical spine and carpal tunnel syndrome caused by the accident. These injuries caused Samuels to suffer neck pain, numbness in both hands, headaches, and pain in her right arm and leg. Her medical experts testified that these injuries required surgical management. Following carpal tunnel surgery on her right arm, her symptoms had improved, although not disappeared. Further expert medical testimony, revealed in a Continuation of Care Plan compiled by one of Samuels’ doctors, indicated that she definitely needed cervical spine surgery at a global cost of $60,000 to $80,000; annual orthopedic care for the next five years at $200 to $400 per visit; a physiatrist two to four times a year at $125 to $350 per visit; a cervical spine MRI every five to ten years at $475 to $550; either physical therapy at $100 per hour or epidural pain injections at a global cost of $1200; and less probable but possible, follow-up spinal surgeries at a global cost of $80,000 to $100,000. Samuels presented an economist who testified that Samuels’ Continuation of Care Plan will cost between $427,000 and $438,000 for the medical services she needs (excluding the possible follow-up surgeries).
 

 In addition to her medical costs, Samu-els presented testimony that the accident reduced her work ability. An economist calculated Samuels’ loss of income to be anywhere between zero and $210,000, based upon her life expectancy of thirty-four remaining years and her annual salary and benefits package of approximately $30,000. The economist placed her total economic damages in the range of $638,912 to $649,712.
 

 The witnesses presented by Torres testified that the injuries suffered by Samuels were the result of degenerative diseases that pre-existed the accident and were, therefore, not caused by Torres. Specifically, as to the carpal tunnel syndrome, they were of the opinion that it was repaired by the first surgery and that no further surgery was necessary. Torres also presented testimony that disagreed with the amount of economic damages Samuels incurred as a result of her diminished work capacity.
 

 In closing statements, Samuels’ attorney argued for damages for past medical expenses of $22,585, past lost wages of $5,000, past pain and suffering of $250,000, future medical expenses of $430,000, future
 
 *1196
 
 lost wages of $105,000, and future pain and suffering of $343,000. Torres’ attorney recommended that Samuels should be awarded her past medical expenses
 
 of
 
 $22,585.33, her lost wages of $4,288, and a future pain and suffering award of $5,000. He urged that, in lieu of awarding Samuels money to pay for neck surgery, the jury should award her $1,000 per year for the rest of her thirty-four-year life expectancy so she can follow up with an orthopedist for her neck. The record reveals that there is absolutely no evidentiary support for such an award of damages.
 

 In its verdict, the jury heavily favored the recommendations made by Torres’ counsel in awarding damages. It found Torres was the legal cause of Samuels’ injuries and awarded Samuels $22,585.33 in past medical expenses, $4,288 in lost wages, $34,000 in damages for future medical expenses, $5,000 for past pain and suffering, and $5,000 for future pain and suffering, for a total of $70,873.33. Samu-els moved for a new trial based on the improper comments made in Torres’ opening statement. That motion was denied. After adjusting for collateral sources, the court entered judgment for Samuels in the amount of $60,873.33. Samuels appeals the judgment, arguing that the verdict rendered by the jury does not adequately award her damages for her injuries because it is based on sympathy for Torres.
 

 No citation of authority is necessary for the well-established principle that all parties are entitled to a fair trial. To that end, the law imposes upon a jury the duty to impartially determine the facts and decide the issues in each case based on the evidence presented and the applicable law.
 
 [3]
 
 Fidelity to that duty prohibits a jury from being swayed by sympathy for any party when rendering its verdict. A soft heart infused with pity proclaims sympathy, not facts based on evidence, and there are no rules of law that guide its direction.
 
 See State Farm Mut. Auto. Ins. Co. v. Revuelta,
 
 901 So.2d 377, 380 (Fla. 3d DCA 2005);
 
 Batlemento v. Dove Fountain, Inc.,
 
 593 So.2d 234, 241 (Fla. 5th DCA 1991). Therefore, the law has long required that the rich man and the poor man stand before the jury as equals so that all parties receive a verdict unaffected by their economic status.
 
 See Hollenbeck v. Hooks,
 
 993 So.2d 50, 51 (Fla. 1st DCA 2008);
 
 Revuelta; Batlemento; see also Lewis v. Hubert,
 
 532 S.W.2d 860, 866 (Mo.Ct.App.1975) (“It is fundamental to our jurisprudence that rich and poor stand alike in our courts and that neither the wealth of one nor the poverty of the other shall be permitted to affect the administration of the law.”). Interjection of the wealth or poverty of any party has been consistently held by the courts to be irrelevant to the issue of compensatory damages in a personal injury case based on negligence, highly prejudicial because it diverts the jury from a fair assessment of damages, and a basis for reversal.
 
 Hollenbeck; Revuelta; Padrino v. Resnick,
 
 615 So.2d 698, 698-99 (Fla. 3d DCA 1992);
 
 Batlemento; Ballard v. Am. Land Cruisers, Inc.,
 
 537 So.2d 1018, 1020 n. 4 (Fla. 3d DCA 1988);
 
 see also Sossa v. Newman,
 
 647 So.2d 1018, 1019-20 (Fla. 4th DCA 1994).
 

 When counsel for Torres revealed the meager income of his client, a juror began to cry and told the trial judge that the
 
 *1197
 
 stories she heard were “sad.” Samuels presented significant evidence regarding her injuries, her economic damages, and the medical expenses she has incurred and will incur in the future. The theory of the defense was that although Torres was negligent, he did not cause Samuels’ injuries because they pre-dated the accident. For example, Samuels presented evidence that she would need future surgery on her spine at a cost of between $60,000 and $80,000. If the jury had believed the evidence presented by Samuels, an award of between $60,000 and $80,000 would have been necessary to compensate her for her future medical expenses for that surgery. On the other hand, if the jury had believed the evidence presented by Torres, it should have awarded her nothing. What the jury actually did was award Samuels for her future medical expenses the sum of $1,000 for every year of her projected thirty-four years of remaining life — an award completely devoid of evidentiary support and one which we believe is explainable only as a result of the prejudicial statement made about the irrelevant issue of Torres’ meager income.
 

 It is clear that counsel for Torres employed a defense stratagem in his opening statement to curry sympathy from the jury and it is obvious from this record that he succeeded. As a result, Samuels was deprived of a fan* trial. We reverse the judgment rendered in this case and remand for a new trial on the issue of damages so that a verdict may be rendered untainted by sympathy for one party or the other.
 

 REVERSED and REMANDED.
 

 ORFINGER and JACOBUS, JJ., concur.
 

 [1]
 

 . Trial counsel for Mr. Torres was Jason Geli-nas, not his appellate counsel.
 

 [2]
 

 . The other plaintiff below, Mrs. Samuels’ husband, is not a party to this appeal.
 

 [3]
 

 . In civil cases, jurors are specifically instructed, "In reaching your verdict[s], you are not to be swayed from the performance of your duty by prejudice, sympathy or any other sentiment for or against any party. Your verdicts] must be based on the evidence that has been received and the law on which I have instructed you.” Fla. Std. Jury Instr. (Civ.) 7.1. The rules of evidence also provide that "[Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice_” § 90.403, Fla. Stat. (2006).