SAWAYA, J.
Litigants are entitled to a fair trial culminating in a jury verdict rendered after consideration of properly admitted evidence and the law. A jury verdict infused with sympathy for a litigant is based on emotion, not the evidence or the law, apd may be set aside. Government Employees Insurance Company (GEICO) invokes these well-established principles in this appeal, claiming that it did not receive a fair trial in the underlying declaratory judgment action because the trial court erroneously allowed Madeline Kisha to introduce evidence of her long relationship with GEICO, as an insured, regarding prior policies that had expired long ago. GEI-CO argues that this evidence was erroneously admitted because it was irrelevant to the issue of whether GEICO cancelled Madeline’s current policy for nonpayment of premiums prior to her automobile accident and her claim for personal injury protection (PIP) benefits. GEICO also argues this evidence was highly prejudicial because it filled the jury with sympathy, thus tainting the verdict and judgment declaring Madeline’s entitlement to those benefits. Hence, the issues of relevance *551 and prejudice direct our review of that verdict and judgment.[1]
The current policy had a designated policy period from December 19, 2010, to June 19, 2011, and provided PIP and un-derinsured/uninsured motorist coverage to Madeline and her husband, Stephen Kisha. The policy contained provisions under the heading “CANCELLATION BY US,” that stated:
We may cancel this policy by mailing to you, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.
We will mail this notice:
(a) 10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;
[[Image here]]
The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.
The Kishas chose to make monthly premium payments. On March 14, 2011, GEICO sent the Kishas the monthly bill requiring payment of $195.20 by March 29th. When GEICO did not receive the payment by the due date, it sent a Notice of Cancellation for Nonpayment of Premium to the Kishas on April 4th. This Notice was in conformance with the cancellation provisions just quoted and advised the Kishas that unless they submitted the past due payment prior to April 20th, the effective date of cancellation, their policy would be cancelled as of that date. The Notice stated in pertinent part, “As of 12:01 a.m. local time Apr. 20, 11, your policy will cancel due to nonpayment of your premium. Keep your policy active by submitting a payment of the past-due amount [of] $195.20 prior to the cancellation effective date.” It added, in boldface, larger font: “Please submit a payment immediately to prevent the cancellation of your policy.” The Notice also advised that if they chose to pay by mail, the payment had to be postmarked by the cancellation date to avoid a lapse in coverage. The Kishas admitted they received the Notice, but neither recalled reading it.
Stephen Kisha testified that he wrote the check for $195.20 to GEICO on April 17th. Athough the check was dated April 17th, the postmark on the envelope was April 25th, five days past the cancellation date. Several weeks later, on May 8th, Stephen and Madeline were injured in a rear-end collision. The Kishas were treated in the emergency room and released. They both filed claims for PIP benefits under the current policy.
On May 19th, Madeline signed to receive a certified letter, dated May 11th, from GEICO. This was a reservation of rights letter that stated, “We are making this reservation of rights because is [sic] appears there may not be coverage for the above date of loss.” A. separate, nearly identical, letter was sent to Stephen. By letter dated June 24th, GEICO informed Stephen and Madeline that there was no coverage for the accident because the policy had been cancelled April 20th for nonpayment of the premium. Madeline filed the underlying declaratory relief action seeking a judgment declaring she was entitled to PIP benefits under the policy. Although her complaint was amended several times, it is not necessary to discuss the iterations of her pleading other than to say *552 that it asserted theories of waiver and estoppel. Stephen Kisha did not join the suit and is not a party to this appeal.[2]
Prior to trial, GEICO filed a motion in limine seeking to exclude evidence of the length of time the Kishas had been policyholders (between seventeen and twenty-four years), arguing that such evidence was irrelevant and prejudicial because it would enrage and curry sympathy from the jury. Madeline’s attorney argued it would be relevant to establish the theories of waiver and estoppel alleged in the complaint. GEICO responded that the only relevant policy and contract was the one that was cancelled for nonpayment and the payment history for that policy, which included a bounced check and two late payments, is the only history that would be relevant. The court denied the motion and the case proceeded to trial.
The jury found GEICO had waived its right to deny insurance coverage to Madeline and that GEICO was estopped from denying coverage. The trial court rendered the declaratory judgment under review and GEICO appeals, raising the issues of relevance and prejudice.
We believe that the length of time the Kishas had been insured by GEICO was not relevant to prove or disprove any material fact and was, therefore, inadmissible under section 90.401, Florida Statutes (2012) (“Relevant evidence is evidence tending to prove or disprove a material fact.”). This fact did not tend to prove any of the elements of waiver: the existence of a right by GEICO that was waivable; GEICO’s knowledge of the right; or GEICO’s intention to relinquish the right. Neither did the length of their relationship tend to prove Madeline’s estoppel claim — that GEICO made a material representation upon which Madeline detrimentally relied. As GEICO correctly points out, the length of her history with GEICO did not tend to prove the Kishas detrimentally relied on any act or omission of GEICO in connection with the April late payment. Madeline’s argument was that GEICO’s cashing of the late check on April 29th, nine days after the policy had been cancelled and ten days prior to the accident, and its retention of the funds after the date of the accident created the detrimental reliance — not anything that had previously occurred in the Kishas’ payment history.[3] Furthermore, there *553 was no evidence that the Kishas had ever before made a payment after a cancellation date, such as occurred here, and thus their payment history was not relevant to the instant situation. Because GEICO had never accepted a payment post-cancellation and reinstated the Kishas’ policy after it had been cancelled, the payment history was irrelevant. See State Farm Mut. Auto. Ins. Co. v. Revuelta, 901 So.2d 377 (Fla. 3d DCA 2005).
GEICO contends that its argument regarding the prejudice issue is equally compelling. GEICO identifies the following trial references to the length of time the Kishas had been insureds of GEICO and asserts that such references appealed to the sympathy of the jury, resulting in the verdict it rendered:
1) In his opening statement, Madeline’s attorney acknowledged this was a renewal policy “because Mrs. Kisha and her husband have been insured by GEICO for 24 years.”
2) In questioning Stephen Kisha, Madeline’s attorney asked how many years he and his wife had been insured by GEICO and he responded, “I want to say between 15, 20 years. Somewhere in there.” The attorney followed up, “And have you-all paid premiums for all those years?” The husband answered, ‘Tes, sir.”
3) During direct examination of Madeline, Madeline’s attorney asked, “And how long have you used GEICO, the defendant, as your auto insurer?” She responded, “[Mjaybe 24 years.”
4) In cross-examining GEICO employee Ms. Travis, Madeline’s attorney asked whether she had looked up the entire history of the Kishas’ years with GEICO and, when Ms. Travis stated there was a seventeen-year history, the attorney responded, “So for 17 years the Kishas have been paying for their premium and have had a policy with GEICO all that time, is that right?”
5) Continuing with his cross-examination of Ms. Travis, the attorney asked, “So it’s fair to say for this policy period— maybe this true for the 17 years — but the Kishas are making payments. It’s late but GEICO is accepting it, the policy continues, and for all they know they still have insurance, right?”
6) In closing argument, Madeline’s attorney argued:
Now, they have been paying premiums for 17 to 21 years. I think we heard both, 17 and ¾. Either way it’s a long time to have an insurance company and to pay premiums month in and month out. It’s thousands of dollars that they’ve been paying to GEICO for this coverage to protect them. This was coverage to protect them, and this is the one time that she has made a claim in all of those years and they leave her out in the cold. After all those years.
(Emphasis added). The attorney subsequently argued:
There’s no obligation for the Kishas to inquire if they have coverage. That’s like saying, okay, every month after you make your payment call GEICO and ask them, Hey, I just want to make sure you got the check because I want to make sure I have coverage. So for 17 to 24 years every month the Kishas should do that; send an e-mail, call them, just want to make sure you got my payment, make sure I have coverage.
(Emphasis added). Counsel continued:
An insurance company like GEICO, they want to try and deny claims. They investigate, they do their evaluation. They take statements. They look over *554 records. What way can we find, to deny this claim? GEICO has the obligation to inform its insureds — in this case the Kishas — if they do not have coverage as soon as possible so they can fix that problem. They owe it to the Kishas for all those years.
(Emphasis added). Counsel added:
These are good customers, good people. Not one claim in 17 to years until now. GEICO knew it was denying coverage. Why would it hide the ball on that?
(Emphasis added). Counsel also argued:
There’s no doubt, in this case, that GEI-CO’s actions have caused Mrs. Kisha to have no coverage for this accident at this point and to have all of the medical bills and her injuries go uncompensated. This case is about what’s fair and what’s just, and I ask that you fix this and make it right.
(Emphasis added).
It is patently obvious that Madeline’s attorney used this evidence to appeal to the jurors’ sympathy when it referenced, for example, “all the years of’ and “thousands of dollars of’ payments the Kishas had made and argued GEICO left the Kishas “out in the cold” upon her first claim. Madeline’s attorney even argued that GEICO “owe[d] it to the Kishas” to provide coverage after all those years. This evidence did nothing more than portray Madeline as a pitiable individual who had been injured in an automobile accident and then abandoned in her time of need by GEICO after many years of paying premiums for insurance from which she never derived a benefit. To suggest, as Madeline does, that it did not unduly influence the jury is to suggest that this court indulge a naive assumption that we are not inclined to do. See Samuels v. Torres, 29 So.3d 1193, 1196 (Fla. 5th DCA 2010) (“A soft heart infused with pity proclaims sympathy, not facts based on evidence, and there are no rules of law that guide its direction.”).
The right to a fair trial necessarily imposes on jurors the duty to fairly and impartially determine the facts from relevant evidence presented to them and apply those facts to the applicable law. Fla. Publ’g Co. v. Copeland, 89 So.2d 18, 20 (Fla.1956); Stanley v. Powers, 125 Fla. 322, 169 So. 861, 863 (1936); Chin v. Caiaffa, 42 So.3d 300, 307 (Fla. 3d DCA 2010), review denied, 68 So.3d 234 (Fla.2011); Samuels, 29 So.3d at 1196; Revuelta, 901 So.2d at 379-80. “Fidelity to that duty prohibits a jury from being swayed by sympathy for any party when rendering its verdict.” Samuels, 29 So.3d at 1196. The irrelevant evidence of the Kishas’ long history with GEICO became one of the centerpieces of Madeline’s case and constituted an impermissible plea for sympathy that impeded the jurors’ ability to fulfill their duty and intruded too far into GEI-CO’s right to a fair trial. Accordingly, the judgment under review is reversed, and this case is remanded for a new trial.
REVERSED and REMANDED.
BERGER and WALLIS, JJ., concur.

. Because we reverse based on these two issues, we will not discuss the other issues raised in this appeal.

. Stephen Kasha took a wait-and-see approach and filed a separate declaratory judgment suit against GEICO three days after Madeline obtained her favorable verdict. The court ruled in Stephen’s suit that, pursuant to the doctrine of offensive collateral estoppel, the issues decided in Madeline’s case precluded GEICO from defending Stephen's case. GEICO filed a separate appeal in Stephen’s case.

. GEICO presented evidence that it received the Kishas’ check on April 28, 2011, and that it was postmarked April 25th. GEICO deposits premium checks as a matter of course. The money is held for a two-week period to give the policyholder the opportunity to contact GEICO to get their policy reissued. If that is what the policyholder chooses to do, GEICO applies the payment to the reissued or newly issued policy. GEICO asserts it keeps the payment for this period of time in order to comply with section 627.7283(2), Florida Statutes (2012), which requires that when an insurer cancels a policy, it is to mail any unused premium to its insured within fifteen days of cancellation. The statute further provides that if the check is not mailed out within the fifteen-day period, the insurer will owe the insured 8% interest on the unearned premium due until it is returned. § 627.7283(3) Fla. Stat. (2012). GEICO issued a refund check that was written and dated May 14th and was mailed out to the Kishas on May 17th. Madeline admitted that at the time of the accident, she did not know that GEICO had deposited the check, and Stephen stated that he did not know GEICO had deposited the check until after suit was filed. Thus, GEICO contends that Madeline could not *553 have detrimentally relied on GEICO’s deposit of the check if she did not know about it.