DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HOMEOWNERS CHOICE PROPERTY
AND CASUALTY INSURANCE COMPANY, INC,**
Appellant,

v.

**SANJAY KUWAS,**
Appellee.

No. 4D17-2383

[July 5, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin J. Bidwill, Judge; L.T. Case No. CACE 16-000510.

Daniel M. Schwarz of Cole, Scott & Kissane, P.A., Plantation, for appellant.

Gray R. Proctor of Fox & Loquasto, P.A., Richmond, Virginia, and John Salcedo and Lidor Kantor of The Mineo Salcedo Law Firm, P.A., Davie, for appellee.

CONNER, J.

Homeowners Choice Property & Casualty Insurance Company, Inc. ("HCI"), appeals the trial court's final judgment entered in favor of Sanjay Kuwas ("Kuwas") and the order denying HCI's post-trial motions. HCI contends the trial court erred by: (1) denying its motion for new trial grounded on Kuwas's improper arguments and questioning of HCI's litigation manager; (2) allowing Kuwas to offer improper impeachment evidence; (3) denying its motion to strike the jury foreperson and motion for new trial on the same ground; and (4) denying its motion for directed verdict and motion to set aside the verdict. Additionally, HCI argues cumulative error as a basis for new trial, if the individual grounds are not sufficient. We reverse on the first issue and remand for a new trial. We affirm as to the second issue (concerning improper impeachment evidence) without discussion. We do not address the remaining issues, as they are rendered moot by our reversal for new trial.

*Background*

Kuwas sued HCI alleging two counts of breach of contract in connection with the insurance company's denial of coverage for two insurance claims he filed in 2011 and 2015 for property damage as a result of water loss.

HCI asserted affirmative defenses based on the following exclusions to coverage for losses caused by: (1) sewer backups; (2) "neglect of the 'insured' to use all reasonable means to save and preserve the property at and after the time of a loss"; (3) constant or repeated seepage or leakage; and (4) inadequate maintenance of the property. Subsequently, HCI withdrew its affirmative defense alleging an exclusion for sewer backups, apparently, not contesting Kuwas's argument that the exclusion did not apply. HCI proceeded to trial on its remaining affirmative defenses.

During the trial, HCI raised objections to various questions posed by Kuwas during the testimony of HCI's litigation manager, as well as various opening and closing arguments by Kuwas.

The jury entered a verdict in favor of Kuwas for a substantial sum. HCI's post-trial motions were denied. HCI gave notice of appeal.

### Appellate Analysis

Denial of a motion for new trial based on improper argument is reviewed for abuse of discretion. *Las Olas Holding Co. v. Demella*, 228 So. 3d 97, 107 (Fla. 4th DCA 2017).

HCI argues that the trial court erred in denying its motion for new trial based on improper arguments and witness questioning: (1) implying HCI's bad faith; (2) emphasizing Kuwas's payment of premiums; and (3) disparaging HCI's defense of the claims. HCI contends that such arguments and questioning were so inflammatory and prejudicial that each alone, or combined, denied HCI a fair trial. We discuss each alternative argument below.

The standard applicable to preserved issues of improper argument is "whether the comment was highly prejudicial and inflammatory." *Murphy v. Int'l Robotic Sys., Inc.*, 766 So. 2d 1010, 1012 n.2 (Fla. 2000).

### Bad Faith

HCI argues that a new trial is warranted because Kuwas presented his theory of the case in such a way as to improperly imply HCI's bad faith in the handling of the claims in this case and other cases in general. In particular, HCI points to Kuwas's remarks that HCI was "playing the odds" in deciding to deny a claim "in the hope that the party who is seeking to

be paid under a policy will not sue them." HCI argues that Kuwas improperly used this phrase in his opening statement, closing argument, and his examination of HCI's litigation case manager.

Review of the record confirms HCI is correct concerning allusions to HCI's purported bad faith. In opening statement, Kuwas said that HCI "decided to play the odds. The odds being that no one will make a claim if they say we're not paying." On direct examination of HCI's litigation manager, Kuwas again used the phrase, stating: "Now then, you would agree with me that if [HCI] is playing the odds, that would be a breach of the policy?" In explaining what he meant by "playing the odds," Kuwas stated: "Well, when I say playing the odds, if [HCI] has made a decision to deny a claim or deny claims in the hope that the party who is seeking to be paid under a policy will not sue them, that would be the wrong thing for [HCI] to be doing." There were multiple other instances during the examination of the litigation manager in which Kuwas used the phrase "playing the odds" or some variation in reference to HCI. Some of HCI's objections were sustained; others were overruled. Finally, Kuwas began his closing argument by stating of HCI that:

> "Everything that one needed to know was stuff that they knew from day one. And what they did was, *they decided to play the odds. Right? We'll talk a little bit about that. They decided, we're going to play the odds. And we're just going to disregard responsibilities that they have, personal responsibility.*"

(emphasis added). HCI objected to this argument as improper, but was overruled.

HCI correctly argues that implications of bad faith should not form a basis to determine liability in a first party insurance coverage action. *See Carvajal v. Penland,* 120 So. 3d 6, 10 (Fla. 2d DCA 2013) (testimony and argument that uninsured motorist insurer shirked its responsibilities and otherwise acted in bad faith warranted new trial where the statements were inappropriate plea to juror's sympathies and focus of trial was injuries and damages, not claims handling and bad faith). "[T]he determination of the *existence of liability* and the extent of the insured's damages" are prerequisites to a bad faith action. *See Cammarata v. State Farm Fla. Ins. Co.,* 152 So. 3d 606, 612 (Fla. 4th DCA 2014) (emphasis added). We have specifically maintained that "where the insurer's *liability* for coverage and the extent of damages have *not* been determined in any form, . . . [such] must be determined before a bad faith action becomes ripe." *Id.* at 613 (first emphasis added).

3

HCI argues that shifting the focus to bad faith in claims handling denied it a fair trial. *See Carvajal*, 120 So. 3d at 10. Additionally, HCI specifically argues that criticism of its claims handling practices as a business practice, which was not based on matters in evidence, was improper. *See Mercury Ins. Co. of Fla. v. Moreta*, 957 So. 2d 1242, 1251 (Fla. 2d DCA 2007) ("[O]pposing counsel's criticism of [insurer]'s alleged litigation tactics and practices was not based on matters in evidence. . . . Because there was no evidence before the trial court to support these claims, it was improper for counsel to make them."). HCI points out that "properly preserved improper witness testimony which is highly prejudicial and inflammatory warrants a new trial, particularly where the damaging testimony is compounded by improper argument." *Carvajal*, 120 So. 3d at 9. HCI argues that Kuwas used the questioning of HCI's litigation manager as an opportunity to paint HCI as a carrier that denies policyholders' claims for any or no reason, thereby shifting the focus inappropriately to HCI's claims handling and bad faith, which were not issues before the jury. We agree with HCI's arguments and reject Kuwas's reliance on claims handling case law in the context of uninsured motorist benefits as counterargument. The reliance on such case law is misplaced because the issues in those cases sound more in tort than in contract.

*Payment of Premiums*

HCI argues that a new trial is also warranted because Kuwas improperly emphasized Kuwas's payment of his premiums during opening statement and closing argument. HCI points to the following comment made by Kuwas's counsel in opening statement:

> There was talk yesterday about reading what you sign. What happened in this case was my client had an agreement with [HCI], you see. And let me explain. This is not a contract where two people sit down and negotiate, come to an agreement, and sign it. No. No.

> [HCI] says, here's the deal. If you pay us X, we will provide you with an insurance policy. *So my client paid X year, after year, after year, after year from back in the '90s, all right, paid X*, and they sent him an insurance policy. So what happens? What happens is, we have an insurance company that decided to play the odds. The odds being that no one will make a claim if they say we're not paying.

4

(emphasis added). HCI objected to this comment as improper, but was overruled. In closing argument, Kuwas's counsel argued that Kuwas "deserves his house back because *he paid not to be in this position.*" (emphasis added). HCI's objection to that argument was overruled, allowing Kuwas, over a renewed objection, to argue that Kuwas "*paid not to be in this position.*" (emphasis added).

HCI argues that it was improper for counsel to emphasize Kuwas's payment of premiums in this manner because the length of time that Kuwas paid his premiums was irrelevant to whether HCI breached its policy when it denied his claims. In support the argument, HCI relies on *Government Employees Ins. Co. v. Kisha*, 160 So. 3d 549, 552-53 (Fla. 5th DCA 2015) (determining references to length of time insured had been insured by automobile insurer constituted an impermissible plea for sympathy that impeded jury's ability to fulfill its duty of impartiality, and thus references denied insurer's right to a fair trial in litigation involving personal injury protection benefits; insured's attorney referenced "all the years of" and "thousands of dollars of" payments insured had made and argued that insurer left her "out in the cold" upon her first claim, and attorney argued that insurer owed it to insured to provide coverage after all those years.).

HCI further argues that the parties in this case had already stipulated that they had a contract for insurance on the property for both pertinent policy periods, and that therefore, opposing counsel's comments that Kuwas paid his premiums "from back in the 90's" and "paid not to be in this position" were irrelevant, improper, and solely calculated to garner sympathy for Kuwas. HCI contends that it would have been one thing for Kuwas to testify that he paid his premiums for the policy periods at issue, but that his counsel's portrayal of Kuwas as a *long-term customer*, suggesting that HCI *owed him* something, was impermissible.

While it does appear that Kuwas's comment that he had been paying his premiums year after year was irrelevant to the dispute at issue, and the trial court therefore should have sustained HCI's objections to these comments, it is questionable whether the objected-to comments alone were so "highly prejudicial and inflammatory" to warrant a new trial when viewed in context of Kuwas's argument as a whole. HCI points to three preserved instances where references were made to Kuwas's payment of premiums. This is unlike the situation in *Kisha*, where plaintiff's counsel referenced and specifically emphasized the length time the claimants were "good customers" in at least ten instances throughout the trial. *Kisha*, 160 So. 3d at 553-54.

5

Unlike the facts of *Kisha*, in this case, the three preserved instances complained of on appeal, while improper, arguably do not *alone* demonstrate that Kuwas's long relationship with HCI became a centerpiece of the trial. We note that two of the comments do not even reference the length of time Kuwas had been making premiums. The only preserved instance that did indicate he made payments for "year after year," while improper, was in the context of explaining how the parties came to their agreement and shifting the focus to what did become one of the centerpieces of Kuwas's case—that HCI decided to "play the odds" to see if Kuwas would sue but for no good faith reason.

*Disparagement of HCI's Defense of the Claims*

HCI argues that Kuwas made comments which improperly denigrated its defenses. HCI correctly argues that "[t]he law is clear that it is improper for an attorney to disparage an opposing party's defense of a case or to suggest that a party should be punished for contesting a claim." *Fasani v. Kowalski*, 43 So. 3d 805, 809 (Fla. 3d DCA 2010). Specifically, HCI argues that the trial court erred in overruling its objection to the following improper comment made by Kuwas's counsel during his closing argument:

> And you know, this case was filed last year. And we're litigating for —— it's an early case, the number 500 case last year probably is 14 months old. *We're litigating for 14 or 15 months. And we're fighting like the dickens over whether or not a sewer backup is excluded. And then we come to court after all this litigation, after all of this depositions, and motions, and whatnot —— . . . Right? After depositions and whatnot, and [HCI] comes in and says oh, by the way, we just were kidding about that one. We're just kidding about that. That one doesn't apply. You know the plaintiff's right, that doesn't apply, okay, but let's try something else, right?*

(emphasis added).

It appears this comment was in reference to HCI's pre-trial withdrawal of its affirmative defense for the sewer backup exclusion. HCI asserts that this comment denigrated its defense and implored the jury to punish it for exercising its rights to conduct discovery and litigate motions in connection with the case, and suggested that HCI knew the application of its policy exclusions lacked merit and evidentiary support, but chose them anyway to avoid responsibility at all costs, altering its selection of exclusions as the facts of the case unfolded in discovery.

6

HCI points out that arguments which denigrate an opponent's defenses by implying they are pretextual are improper. *See, e.g., Allstate Ins. Co. v. Marotta*, 125 So. 3d 956, 960–61 (Fla. 4th DCA 2013) ("[C]omments such as Allstate 'made up issues' and 'manufacture[d]' a defense improperly denigrated Allstate's defense and counsel." (second alteration in original)); *Chin v. Caiaffa*, 42 So. 3d 300, 309 (Fla. 3d DCA 2010) (improper for counsel to comment to the jury that opposing counsel was "try[ing] to fool you"); *Sanchez v. Nerys*, 954 So. 2d 630, 632 (Fla. 3d DCA 2007) (argument that defense counsel was "pulling a fast one" and "hiding something" was improper argument requiring a new trial). HCI argues that Kuwas pressed this same improper theme in rebuttal, stating that if this was a health insurance case, that HCI would have been "up here with the policy saying, look, it's preexisting, and its old, and it's this, and it's that." HCI's objection to this comment was also overruled.

HCI further argues that Kuwas's comment that the parties were "fighting like the dickens," and HCI was participating in depositions and litigating motions, implied that the jury should punish HCI for defending itself against Kuwas's claims. HCI contends this comment was calculated to attract the jury's attention to irrelevant pretrial conduct and implied that HCI should be penalized for requiring Kuwas to take the actions necessary to prove his case.

In response, Kuwas argues that because the jury learned that HCI withdrew its defense regarding the sewer backup exclusion, the comments were made to point out the differences between the reasoning in the denial letters and the defenses. However, review of the actual comments do not support that assertion. Contrary to Kuwas's contention, the comments did not merely point out the differences in the denial letters and HCI's defenses at trial. Rather, they implied that HCI was wasting Kuwas's time litigating the case for 14 or 15 months and "fighting like the dickens" litigating motions and attending depositions and conducting discovery, only to say prior to trial, "just kidding," "that one doesn't apply," "but let's try something else," suggesting HCI would try anything to avoid paying its claim. Furthermore, despite the fact that HCI withdrew one of its defenses prior to trial, this did not authorize Kuwas to emphasize HCI's litigation conduct before the jury in such a manner as to chastise HCI for exercising its right to defend.

HCI is correct that "[a] plaintiff may not suggest to the jury that a defendant is somehow acting improperly by defending itself at trial or that a defendant should be punished for contesting damages." *R.J. Reynolds Tobacco Co. v. Robinson*, 216 So. 3d 674, 681 (Fla. 1st DCA 2017), *reh'g denied* (May 17, 2017), *rev. denied*, SC17-1130, 2017 WL 5986208 (Fla.

Dec. 4, 2017); *see* also *State Farm Mut. Auto Ins. Co. v. Thorne*, 110 So. 3d 66, 74–75 (Fla. 2d DCA 2013) (declaring improper plaintiff's "contention in closing that the defendants' evidence and argument were an attempt 'to avoid responsibility' and, as a result, the defendants exhibited shameful conduct"); *Intramed, Inc. v. Guider*, 93 So. 3d 503, 507 (Fla. 4th DCA 2012) ("Counsel's arguments improperly suggested that the defendant should be punished for contesting damages at trial and that its defense of the claim in court was improper."); *Carnival Corp. v. Pajares*, 972 So. 2d 973, 978 (Fla. 3d DCA 2007) ("The arguments made by Pajares' counsel, denigrating Carnival's defense of Pajares' claim and suggesting that Carnival should be punished for contesting liability, are the type of arguments previously condemned by this Court, and are equally condemned in the instant case."). We agree that a new trial is warranted because the comments made by Kuwas in closing argument improperly denigrated HCI's defenses and were so highly prejudicial and inflammatory such that it was denied its right to a fair trial.

Finally, we conclude the errors in this case are not harmless. In civil cases, "the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict. Alternatively stated, the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict." *Special v. W. Boca Med. Ctr.,* 160 So. 3d 1251, 1256 (Fla. 2014). For the foregoing reasons, we reverse the judgment and remand the case for a new trial.

*Affirmed in part, reversed in part, and remand for new trial.*

CIKLIN, J., and ROBERTS, KATHLEEN H., Associate Judge, concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***