ROTHENBERG, Judge.
The defendants, Daniel G. Kalbac, M.D. (“Dr. Kalbac”) and Orthopaedic & Sports Medicine Center of Miami, P.A. (“the Center”) (collectively, “the Defendants”), appeal from a jury verdict and final judgment in favor of the plaintiffs, Bradley G. Waller (‘Waller”) and Carmen Causaras-Waller (collectively, “the Plaintiffs”). We affirm.
After suffering a fall and receiving emergency room treatment, Waller presented to Dr. Kalbac on May 29, 2002, complaining of pain in the area of his left hip. Dr. Kalbac ordered an MR/artho-gram [1] of the affected area and prescribed pain medication. On June 5, 2002, when Waller returned for his regularly scheduled appointment, Dr. Kalbac informed Waller that he had a labral capsular tear, which would take several weeks to heal, and he prescribed a physical therapy regimen. In addition, Dr. Kalbac provided Waller with a second prescription for thirty tablets of pain medication with an additional refill.
Two weeks later, on June 19, 2002, Waller returned to the Center seeking additional pain medication. Dr. Kalbac was not available and did not meet with or examine Waller. Instead, Dr. Ceballos, another physician at the Center, acting through a physician’s assistant, supplied Waller with a prescription for more pain medication.
Five days later, on June 24, 2002, when Waller returned for his regularly scheduled appointment with Dr. Kalbac, Dr. Kalbac noted swelling in Waller’s left leg, but did not attempt to determine the source of Waller’s pain. When Waller went to physical therapy that day, he could do very little due to the severity of his pain. The therapist noted that on a scale of one to ten, Waller assessed his pain at ten (the highest range); he had poor range of movement; his gait was abnormal; and there was a grinding of the hip. The therapist faxed these observations to Dr. Kalbac.
Two days later, on June 26, 2002, when Waller was examined by Dr. Kalbac, Wal *595 ler’s pain prevented him from bending over, and he had to be helped in and out of his clothes for the examination. Dr. Kal-bac ordered no tests and prescribed more pain medication. In July, Waller collapsed and could not walk. He called Dr. Kal-bac’s office and received more pain medication. On July 14, 2002, because he was in severe pain, Waller went to the hospital emergency room where he received an injection and pain medication, and he was instructed to see his physician. As instructed, Waller went to Dr. Kalbac’s office the following day, where he described the previous day’s visit to the emergency room and reported his increased pain. Although Dr. Kalbac was in the office, he did not examine Waller. Instead, Dr. Kalbac simply issued another prescription for pain medication.
When Waller was seen by Dr. Kalbac on July 29, 2002, Waller was on crutches and his left leg was swollen. Dr. Kalbac ordered a Doppler Scan to rule out deep vein thrombosis, but did not otherwise attempt to determine the cause of the swelling.
Throughout July and August, Waller was treated by an acupuncturist for his pain. The acupuncturist eventually told Waller that he believed an infection had developed in Waller’s hip, noted that one of Waller’s legs was noticeably shorter than the other, and recommended that he seek medical attention.
On September 11, 2002, Waller was seen by Dr. Kalbac, and at Waller’s request, Dr. Kalbac ordered x-rays of Waller’s hip, which revealed the erosion of much of Waller’s femur. Additional tests revealed that Waller had developed a massive staph infection in his left hip that required a surgical referral, and eventually, total hip replacement surgery.
The Plaintiffs’ 2004 lawsuit proceeded to a jury trial. Testimony indicated that Dr. Kalbac bore primary responsibility for the course of Waller’s treatment, and that despite Waller’s continued consumption of pain medication and his complaints of increasing pain, Dr. Kalbac (and therefore, the Center) negligently failed to diagnose the infection that was spreading in Waller’s hip throughout the summer of 2002. The jury entered a verdict for the Plaintiffs, and subsequently, the trial court issued an amended final judgment, jointly and severally, against the Defendants.
The Defendants raise two primary issues in this appeal. The Defendants assert that the trial court erred in denying their motion for a mistrial after a portion of a videotaped deposition, which was to have been redacted by the videographer, was improperly played for the jury. They contend that this testimony injected an unpled theory of liability into the proceedings, thereby compelling a new trial. Secondly, the Defendants argue that the trial court erred in allowing the Plaintiffs to elicit expert testimony regarding the standard of care from more than one witness in violation of a motion in limine.
THE DENIAL OF THE DEFENDANTS’ MOTIONS FOR MISTRIAL AND A NEW TRIAL
A trial court is granted broad discretion in ruling on a motion for a new trial, Brown v. Estate of Stuckey, 749 So.2d 490, 494 (Fla.1999), and a trial court’s denial of a motion for mistrial will not be disturbed absent an abuse of discretion. Kinnebrew v. KMart Corp., 755 So.2d 187, 188 (Fla. 3d DCA 2000).
The Defendants claim that the wrongfully played portion of the videotaped deposition suggested that Dr. Ceballos was negligent for failing to examine Waller on June 19, 2002, and that Dr. Kalbac should be held vicariously hable for Dr. Ceballos’ negligence. The trial court found that al *596 though these portions of the videotaped deposition were erroneously played for the jury, the harm caused by the error did not warrant a new trial. That finding is supported by the following undisputed facts: counsel for the Plaintiffs’ arguments to the jury focused solely on Dr. Kalbac’s direct negligence; counsel for the Plaintiffs did not suggest that Dr. Kalbac should be held vicariously liable for the acts or omissions of others; and the jury was instructed on, and presented with, just one dispositive question — whether Dr. Kalbac was directly negligent during the course of Waller’s treatment. We additionally note that counsel for the Defendants did not move to strike the offending testimony nor request that a curative instruction be given, and the trial court was in the best position to determine what effect the erroneously admitted testimony had on the proceedings below. See Philip Morris Inc. v. French, 897 So.2d 480, 490 (Fla. 3d DCA 2004) (citing Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980)). We, therefore, find no abuse of discretion in the trial court’s denial of the Defendants’ motions for mistrial and a new trial.
THE EXPERT TESTIMONY
The Defendants claim that the Plaintiffs violated a motion in limine precluding the introduction of more than one expert witness regarding the standard of care and causation. We conclude that this claim is without merit.
The trial court’s pre-trial order merely limited the parties to “one retained expert per specialty.” The motion in limine filed by the Defendants sought to preclude “du-plicative testimony” without referencing any specific witness or evidence. The Defendants did not seek nor obtain a ruling on this motion. Thus, when counsel for the Defendants moved to exclude the Plaintiffs’ experts on the third day of trial on the basis that their testimony would be cumulative, the trial court properly denied the motion. See Fla. R. Jud. Admin. 2.505(d) (providing that no agreement between the parties or their attorneys concerning the practice or procedure in an action shall be of any force unless it is in writing or made before the court and promptly made a part of the record or stenographic notes of the proceedings).
Affirmed.

. An MR/arthogram is a diagnostic test involving the injection of a contrasting dye into the affected joint to improve the resolution of the ensuing magnetic resonance image. The procedure carries some risk of infection.