# Third District Court of Appeal

## State of Florida

Opinion filed January 4, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-3005
Lower Tribunal No. 11-117-K
_____

**GEICO General Insurance Company,**
Appellant,

vs.

**Thomas A. Dixon,**
Appellee.

An Appeal from the Circuit Court for Monroe County, Tegan Slaton, Judge.

Carlton Fields Jorden Burt, P.A., and Paul L. Nettleton, for appellant.

Kimberly L. Boldt, Jeffrey D. Mueller and Mario R. Giommoni (Boca Raton); Hoffman, Larin & Agnetti, P.A., and John B. Agnetti and David Perkins, for appellee.

Before SUAREZ, C.J., and SCALES, J., and SHEPHERD, Senior Judge.

SHEPHERD, Senior Judge.

This is an appeal by GEICO General Insurance Company from a trial court order denying GEICO's motion for new trial on compensatory damages in an automobile accident case involving an uninsured motorist in which the jury first considered and awarded compensatory damages against both GEICO and the co-defendant uninsured motorist driver arising out of the accident, and then reconvened to consider an award of punitive damages against the uninsured motorist driver alone. Before trial, GEICO and the co-defendant uninsured motorist driver admitted liability for the accident, and the court ordered that the plaintiff, GEICO's insured, was entitled to recover an award of punitive damages against the uninsured motorist driver in an amount to be determined in the second phase of the proceeding.[1]

GEICO's principal assignment of error is the admission of evidence showing that the uninsured motorist driver was intoxicated beyond the legal limit at the time of the crash in the compensatory phase of the trial. We agree and reverse and remand the case for a new trial on compensatory damages. We find the evidence of the uninsured motorist driver's alcohol use was irrelevant to the issue of the amount of compensatory damages, which was the subject of the first phase of the proceedings, and that any arguable probative value the evidence might have had –

---

[1] The trial resulting in the judgment on appeal is actually the third time this case was tried. Two prior attempts to try this case resulted in mistrials for reasons unrelated to this appeal.

say, to the credibility of the testimony of the uninsured defendant driver – was substantially outweighed by the danger of unfair prejudice.

Because we are remanding this case for a new trial on compensatory damages, we also address two issues raised by GEICO concerning the sufficiency of the evidence to support the future economic damage award to the plaintiff because they are likely to recur in the new trial. A brief summary of the factual and procedural background of this case is necessary to explain our decision.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arises out an automobile accident which took place on May 17, 2009, in Monroe County, in which GEICO insured, Thomas Dixon, was struck head-on by a vehicle driven by Gerardo Alcebo. Alcebo was driving under the influence of alcohol at the time of the accident and ultimately was adjudicated guilty of driving under the influence causing "bodily injury." See § 316.193(3)(a), (b) and (c)(2), Fla. Stat. (2015). Alcebo did not have a policy of liability insurance. Dixon's policy, issued by GEICO, included uninsured motorist coverage of up to $20,000 per person.

In 2011, Dixon sued GEICO for breach of contract for failure to pay the amount of the uninsured motorist coverage and joined Alcebo as a co-defendant seeking both compensatory and punitive damages against him for negligently and recklessly operating a motor vehicle while intoxicated causing serious bodily

3

injury. Prior to trial, Alcebo and GEICO admitted liability for the accident, and the trial court ruled, as a matter of law, that Alcebo was punitively liable for driving under the influence of alcohol at the time. Thus, the only issues remaining to be tried were the amounts of compensatory and punitive damages which should be awarded to Dixon.[2] Before trial, GEICO moved to bifurcate the two issues and to exclude any reference to Alcebo's intoxication during the first compensatory damages trial. The trial court granted bifurcation, but nullified GEICO's reason for bifurcation by permitting Dixon to offer evidence and argument on Alcebo's intoxication during the compensatory phase.

Alcebo's intoxication while driving quickly became the central theme of the first phase of the trial. The trial judge himself began the barrage by instructing the jury, before the first witness was called, that "punitive damages are warranted against Mr. Alcebo as a punishment to him and as a deterrent to others because he was driving under the influence of alcoholic beverages . . . to the extent that his normal faculties were impaired while having a blood alcohol level of .08 or higher and during the course of such driving . . . he caused . . . bodily injury to Mr. Dixon." Dixon's first witness was the state trooper who investigated the DUI

---

[2] Included in the calculation of the amount of compensatory damages was the sub-issue of whether Dixon sustained a permanent injury as a result of the accident. Absent permanent injury, a plaintiff is entitled to recover UM benefits only for economic damages incurred as a result of injuries sustained in the accident and not for economic damages, such as pain and suffering. See §§ 627.727, 627.737, Fla. Stat. (2015).

charges. Counsel for Dixon repeatedly referred to Alcebo's drunk driving as "a conscious decision to operate a vehicle while under the influence of alcohol" and stressed that "GEICO stands in the shoes of Alcebo" for purposes of the compensatory damage award. Although the focus of phase one should have been on the issue of permanent injury and the amount of compensatory damages to be awarded, counsel for Dixon made Alcebo's, and in his stead GEICO's, callousness in causing Dixon's injury the central feature of the trial.

As to damages, Dixon admitted he had suffered from back pain since the early 1990's. In 2004, Dixon underwent spinal surgery to relieve the pain. Dixon testified he did not take any pain medication for back pain between the 2004 surgery and the date of the automobile accident. However, Dixon testified that after the accident he was prescribed Oxycontin and gradually became addicted. After a second back surgery in 2011, Dixon began to take Suboxene to detoxify himself from the Oxycontin. Dixon testified:

> DIXON: . . . [Dr. Nordt] gave me the scrip to take to [the detox clinic] to tell him to detox me the proper way. So they put me back on the medication, and he slowly took me down off of it until he slowly put me on a drug called Suboxone. *Suboxone is designed for opiate addiction*, and it's called an opioid. I can't really explain to you how it works, but it causes the brain to do something to where and *it does have a mild painkiller in it, too.*
>
> COUNSEL: Do you take it every day?
>
> DIXON: Every day of my life.
>
> COUNSEL: How many times a day do you take it?

5

DIXON: I take eight -- I take four milligrams, three times a day.

COUNSEL: And can you advise the jury what that costs you?

DIXON: It costs me $560 a month, like $565, something like that.

During closing arguments and without any evidentiary basis, Dixon's counsel suggested the jury should award Dixon a five-year supply of Suboxone as future medical damages.

Next, in support of his claim for future loss of earning capacity, Dixon testified that on May 4, 2009, thirteen days before the accident, he retired from Florida Keys Aqueduct Authority after working there for a little over thirty-five years. He testified he was hired by the Authority soon after graduation from high school. He was later promoted to supervisor of engineering and worked in that capacity for the last fifteen to twenty years of his employment. At age fifty-three, he accepted a retirement package. Dixon testified that he planned to take three to six months off after retirement and then begin to supplement his retirement income by working "in the diving industry for hydrostacking [sic] dive tanks and the repair of fiber tanks." He testified he had hands-on work experience in this area through his association with a dive shop located at a Chevron gas station. He stated "the boss from there flew me and another guy . . . up together to Chicago to get training in order to have a certification to be able to do it." Dixon obtained the certification but was never hired at the Chevron due to its closure. Nonetheless, he testified that

6

he expected to subsidize his retirement by making $2,000 to $2,500 a month in that business after a brief vacation. However, because of the back injury he claimed was related to the accident, he could no longer perform that type of work. During closing arguments, Dixon's counsel suggested an award for future loss of earning capacity of $288,000, based on the scenario of Dixon working in the hydrostatic testing business for twelve years, or until he reached the age of sixty-six, at $2,000 a month.

At the close of the compensatory trial, the jury found Dixon suffered a permanent injury to his back as a result of the accident and returned an itemized verdict of $970,396.62 in compensatory damages. The award included $33,600.00 for future medical expenses and $288,000.00 for loss of future earning capacity.[3]

---

[3] The jury also returned a verdict for $1,000.00 in punitive damages against Alcebo. The paltry punitive damage verdict is explained by the fact that Dixon's real play in this case is to build up the compensatory damage award against Alcebo as much as possible in order to seek an amount in excess of the uninsured motorist limit of $20,000 from GEICO in a first party bad faith action Dixon has pending against GEICO pursuant to section 624.155 of the Florida Statutes. At present, Dixon is limited in the amount of compensatory damages he can recover from GEICO to the amount of the uninsured motorist's coverage, and the final judgment so reflects. See Fridman v. Safeco Ins. Co. of Ill., 185 So. 3d 1214 (Fla. 2016); Nationwide Mut. Fire Ins. Co. v. Voigt, 971 So. 2d 239 (Fla. 2d DCA 2008). A punitive damage award in any amount is not recoverable under section 624.155 without a claim of a general business practice which violates the statutes. § 624.155(5), Fla. Stat. (2015). Because Alcebo is impecunious (to the point he did not even show up for the third trial), counsel for Dixon agreed to limit the amount of punitive damages he would seek against Alcebo to $1.00 for the likely purpose of encouraging Alcebo's cooperation with Dixon in the litigation. The jury awarded 1,000 times more than Dixon agreed to seek.

GEICO's motion for a new trial based on the evidence of Alcebo's intoxication elicited during the compensatory damages phase of the trial, and its motion for directed verdict as to Dixon's claim for future medical expenses and loss of earning capacity were also denied.

The trial court entered judgment against GEICO in the amount of $20,000.00, the uninsured motorist policy limit, and against Alcebo for the remaining amount of the compensatory damages according to the verdict. GEICO timely appealed.

## ANALYSIS

We review the denial of a motion for directed verdict *de novo*, Banco Espirito Santo Intern., Ltd. v. BDO Int'l, B.V., 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008), and the admission of evidence and denial of a motion for new trial under an abuse of discretion standard. Kalbac v. Waller, 980 So. 2d 593, 595 (Fla. 3d DCA 2008); H & H Elec., Inc. v. Lopez, 967 So. 2d 345, 347 (Fla. 3d DCA 2007).

1. Irrelevant DUI Evidence and Argument.

The trial court correctly exercised its discretion when it granted GEICO's motion to bifurcate the compensatory and punitive damage issues in the trial of this case. See Fla. R. Civil P. 1.270(b); Roseman v. Town Square Ass'n, 810 So. 2d 516, 519-20 (Fla. 4th DCA 2001) ("[T]he trial court's decision to bifurcate is

8

subject to an abuse of discretion standard of review.") However, the laudable purpose of the motion was annulled when the trial judge admitted evidence and permitted argument concerning drunk driving in the compensatory damage phase of the bifurcated proceeding.

In an automobile negligence case, when the defendant admits liability regarding the cause of the accident, evidence of the defendant's sobriety is irrelevant and prejudicial. Swanson v. Robles, 128 So. 3d 915, 917-18 (Fla. 2d DCA 2013); see also Jones v. Alayon, 162 So. 3d 360 (Fla. 4th DCA 2015); Neering v. Johnson, 390 So. 2d 742, 742 (Fla. 4th DCA 1980) (concluding the trial court erred in admitting testimony of defendant's sobriety when "[p]rior to trial the parties entered into a written stipulation by which appellant admitted liability and the parties agreed the sole issue for trial was the damages incurred by appellees"). The existence of the punitive damage claim in this case does not change the result because the trial court also found before trial that Alcebo was liable for punitive damages. Swanson, 128 So. 3d at 918 (concluding that when "liability for punitive damages was no longer at issue . . . [t]here was no reason to admit evidence of [defendant's] drug use in a bifurcated first phase other than to inflame the jury and increase the compensatory damages verdict"). For these reasons, we hold that the trial court abused its discretion by allowing evidence and argument regarding Alcebo's drunk driving in phase one of the trial, and order a new trial on the issue

9

of compensatory damages. Furthermore, because we are reversing and remanding the case for a new trial and the issues may occur on retrial, we also address the sufficiency of the evidence to support the award of future economic damages for future medical expenses and future loss of earning capacity.

2. Future Economic Damages Evidence.

As a matter of law, future economic damages are only appropriate when established with reasonable certainty. See Auto-Owners Ins. Co. v. Tompkins, 651 So. 2d 89, 91 (Fla. 1995); Fasani v. Kowalski, 43 So. 3d 805, 812 (Fla. 3d DCA 2010). Thus, Dixon had the burden to establish his need for future medical treatment, within a reasonable degree of certainty, and to provide evidence for the jury to determine, with reasonable certainty, the amount needed to pay for the treatment. See Loftin v. Wilson, 67 So. 2d 185, 188 (Fla. 1953); Fasani, 43 So. 3d at 812; DeAlmeida v. Graham, 524 So. 2d 666, 668 (Fla. 4th DCA 1987). "A mere possibility that certain treatment might be obtained in the future cannot form the basis of an award of future medical expenses." Fasani, 43 So. 3d at 812 (citing Truelove v. Blount, 954 So. 2d 1284, 1288 (Fla. 2d DCA 2007)). Similarly, Florida law does not permit a plaintiff to recover loss of future earnings unless plaintiff proves with a reasonable degree of certainty his or her future earning capacity. Truelove, 954 So. 2d at 1288 (citing W.R. Grace & Co.-Conn. v. Pyke, 661 So. 2d 1301, 1303-04 (Fla. 3d DCA 1995)). After a close review of the

10

trial transcripts in this case, we find there is an insufficient evidentiary basis for the jury to determine, with reasonable certainty, both future medical expenses and future loss of earning capacity.

The evidence Dixon presented to support his claim for future medical expenses consisted solely of his testimony that at the time of trial he was taking the prescription drug, Suboxone, to detoxify himself from an opiate addiction. The evidence is unclear whether the opiate addiction had any relationship to the accident. More significantly, there is a complete absence of any testimony, either lay or expert, evidencing, with reasonable certainty, how long into the future Dixon would need to take the drug. The jury simply accepted the suggestion by counsel for Dixon in final argument that five years was a sufficient number of years to use to calculate the award. The jury awarded precisely the amount suggested by counsel. The trial court should have granted GEICO's motion for directed verdict on this award.

In support of future loss of earning capacity, Dixon testified to his plans for future employment, but did not present sufficient evidence from which the jury could determine, with any degree of certainty, that Dixon was prevented by his injury-related limitations from obtaining suitable work in the future, including work hydrotesting and repairing dive tanks. Dixon testified he had obtained experience in this field through his association with a dive shop located at a gas

station and received certification for the work. However, he presented no concrete evidence demonstrating the availability of this type of job in the diving industry or the pay being offered for such a position. Dixon speculated he could earn $2,000 to $2,500 a month in that business, and his counsel suggested Dixon could earn this amount until he was sixty-six. Essentially, Dixon wanted the jury to follow his unfounded supposition that, because he was trained for hydrostatic testing and because his back injury prevented him from doing this work, he no longer has any capacity to earn supplementary income during his retirement years. Without evidence of alternative employment for a man of Dixon's age, skills, education, etc., the jury was forced to engage in a future loss of earnings analysis which is not recognized in Florida.

## CONCLUSION

For the foregoing reasons, we find the trial court abused its discretion in admitting irrelevant evidence of Alcebo's intoxication during the compensatory damages trial when, prior to trial, the defendant admitted causing the accident and the court determined punitive damages liability as a matter of law. We also agree that the court below erred in denying GEICO's motions for directed verdict and judgement notwithstanding the verdict regarding future economic losses. Accordingly, we reverse and remand for a new trial.

12